**Dr. Milton MARGOLES, Plaintiff,**

v.

**Doctor F. A. ROSS et al., Defendants.**

**No. 70–C–151.**

United States District Court,
W. D. Wisconsin.

July 25, 1975.

Wayne B. Giampietro, Chicago, Ill., for plaintiff.

Charles R. Larsen, Asst. Atty. Gen. of Wis., Madison, Wis., for defendants.

## OPINION AND ORDER

## ON MOTION FOR SUMMARY JUDGMENT

ROBERT D. MORGAN, District Judge, Sitting by Designation.

This is a civil action for money damages. Plaintiff sues in four "causes of action" for (1) the alleged violation of his civil rights by defamation, (2) an alleged conspiracy by all defendants to violate his civil rights as alleged in the first cause, (3) alleged slander by defendant Ross in an interview with a newspaper reporter, and (4) alleged denial of his right to due process of law in the conduct of hearings by the Wisconsin State Board of Medical Examiners concerning his application for restoration of license to practice medicine in Wisconsin. Jurisdiction is claimed under 28 U.S.C. §§ 1331 and 1343(3) and 42 U.S.C. §§ 1983 and 1985, and also under 28 U.S.C. § 1332.

In complaint originally filed June 11, 1970, plaintiff sets forth that he was convicted of violations of the Internal Revenue Code on June 3, 1960, and was sentenced to serve one year in prison and to pay fines of $15,000; that he was convicted on October 12, 1960, of attempting to influence an officer of the court and to obstruct justice, and was sentenced to serve five years in prison and to pay fines of $5,000 (and on the same day was acquitted of a charge of attempted bribery); that on June 6, 1961, he was convicted of a misdemeanor for communicating with a juror and was sentenced to serve six months in prison and to pay fines of $1,000; that on July 14, 1960, the Wisconsin State Board of Medical Examiners recommended revocation of his license; that on February 26, 1962, his license was revoked by the Circuit Court for Milwaukee County; that on September 15, 1962, he was released on parole; that in September, 1966, his parole expired; that he has since applied for and been granted licenses to practice medicine in Michigan, Indiana, New Jersey, California, Vermont, and the District of Columbia; and that he has applied for and been denied licenses in Iowa, Illinois, and Wisconsin, among other states. (License has been granted in Illinois since the complaint was filed.)

For his first cause of action, plaintiff alleges that defendants, or some of them, or one of them, have attempted to prevent his licensure in other states by supplying not only correct information about him, but by vigorously and aggressively supplying varying degrees and types of false information to persons and agencies requesting information about him, and to persons and agencies not requesting such information. The degrees and types of false information allegedly include the following:

1.  Between March and June, 1966, defendants sent certain unsubstantiated complaints to the Iowa State Board of Medical Examiners in an attempt to induce that board to refuse plaintiff's application for a license.

2.  Between March and June, 1966, defendants falsely and maliciously, in communication to the Iowa State Board of Medical Examiners, accused plaintiff of having performed illegal abortions.

3.  During March, 1968, an employee of the Wisconsin State Board of Medical Examiners travelled to the State of Michigan under the direction of the defendants and interviewed potential associates and employers of plaintiff in an attempt to discourage them from employing and associating with plaintiff, and also falsified certain

records and reports relating to plaintiff.

4.  Between October and December, 1968, defendants made unsolicited contacts with the New Jersey Medical Board and falsely and maliciously advised that board that plaintiff was fraudulently misrepresenting his background and was unsuited for practicing medicine, all for the purpose of attempting to influence the board to rescind plaintiff's license.

5.  During the period from 1964 to and including 1969, defendants sent letters to the Illinois Medical Licensing Board which were derogatory to plaintiff, and which contained false representations, in a successful attempt to preclude an Illinois license to the plaintiff.

6.  Defendants willfully and maliciously misrepresented records and information for the purpose of discrediting plaintiff and preventing his licensure in certain states, precluding plaintiff's employment by persons, organizations and communities eager and willing to retain his services.

Plaintiff contends that by these utterances defendants are depriving him of his right to practice medicine and thereby of valuable property, to his damage.

For his second cause of action, plaintiff alleges that all of the defendants conspired among themselves to deprive him of the rights as set forth in the first cause of action.

For his third cause of action, plaintiff alleges that defendant Ross falsely, willfully and maliciously made a statement to a reporter for United Press International, in Milwaukee, Wisconsin, which was substantially as follows: "Dr. Margoles' attempt to secure licensure in this state is a joke." "He has been performing abortions"; that defendant Ross intended his statement to mean that plaintiff was performing illicit and unlawful abortions on women and violating his responsibility and oath as a physician and surgeon; that the person to whom the statement was made understood said words to have such meaning; that the statement was not true; and that defendant Ross knew that it was not true.

In an Amended Complaint for which leave of court was granted December 21, 1973, for his fourth cause of action plaintiff alleges that sometime after his release on parole, he petitioned the Wisconsin Board of Medical Examiners for reinstatement of his license; that he was granted a hearing, after which the board recommended that his license not be reinstated; that in conducting the hearing, the board and each member of the board deprived him of his right to due process of law in the following respects, among others:

1.  The conclusions of the board were based upon evidence which the board and the members thereof knew was false.

2.  The findings of fact and conclusions of law were contrary to evidence in the possession of the board.

3.  The findings of fact and conclusions of law were based, at least in part, on evidence which was received by the board *in camera*, of which plaintiff was not informed and which plaintiff was not given an opportunity to rebut.

4.  The findings of fact and conclusions of law were based, at least in part, on evidence which was received by the board subsequent to the closing of the hearing.

The case is now before the court on defendants' motion for summary judgment under Rule 56, Federal Rules of Civil Procedure.

It is clear that no genuine issue exists with respect to many facts which are established by affidavit, admissions, irrefutable record, etc., and which are whol-

ly uncontroverted, except possibly by argument as to import.

## UNCONTROVERTED FACTS

Plaintiff is a resident of Illinois. All defendants are residents of Wisconsin. All defendants except defendants Pressentin and Dalton are or have been members of the Wisconsin State Board of Medical Examiners, which is the agency of the State of Wisconsin empowered to license physicians and surgeons in that state. Defendant Ross was a member of the board from July, 1955, to July, 1959, and from July, 1965, to July, 1969. Defendant Henney was a member of the board from July, 1959, through May 19, 1975. Defendant Zach was a member of the board from July, 1965, through July, 1969. Defendant Custer was a member of the board from approximately July, 1967, through July, 1971. Defendant Satory was a member of the board from approximately July, 1967, through July, 1971. Defendant Twohig was a member of the board from approximately July, 1967, through July, 1971. Defendant Withrow was a member of the board from approximately July, 1959, through July, 1963, and from July, 1965, through July, 1973. Defendant Lawton was a member of the board from approximately July, 1963, through approximately July, 1967.

Defendant Tormey was a member of the board from July, 1953, through July, 1963, and from July, 1965, through July, 1973. He was employed by the board as Executive Secretary from July, 1963, through July, 1965, served as Secretary of the Board from approximately February, 1954, through July, 1963, and from July, 1965, through July, 1973. Defendant Tormey was charged with the responsibility of handling the correspondence of the Wisconsin State Board of Medical Examiners, continuously, from approximately February, 1954, through July, 1973.

Defendant Pressentin was employed as investigator and legal counsel by the Wisconsin State Board of Medical Examiners from approximately August 15, 1954, to December 31, 1965. In that capacity he was called upon to make investigations for the board and report on such investigations with respect to applications for relicensure by persons formerly licensed in Wisconsin as physicians.

Defendant Dalton is employed as an Assistant Attorney General by the State of Wisconsin, and has been so employed since 1955. He has acted as counsel to the Wisconsin State Board of Medical Examiners since June, 1968. In that capacity he has rendered legal advice to the board and to members of the board, has appeared at board meetings at which plaintiff's relicensure was discussed, has participated in the conduct of hearings, and has engaged in investigative activity.

None of the defendants, Ross, Zach, Custer, Satory, Twohig, Withrow, and Lawton, ever communicated, either orally or in writing, information contained in the board's files with respect to plaintiff's attempt to obtain relicensure in Wisconsin, or activities related thereto, to the licensing boards, or members thereof, of any other state, or to prospective employers or associates of plaintiff. Defendant Henney, prior to his assuming the duties of Secretary of the Board in 1973, never communicated, either orally or in writing, information contained in the board's files with respect to plaintiff's attempt to obtain relicensure in Wisconsin, or activities related thereto, to the licensing boards, or members thereof, of any other state, or to prospective employers or associates of plaintiff.

Defendant Pressentin never had any correspondence with the medical licensing boards, or members or employees thereof, in the states of Iowa, Illinois, New Jersey, Michigan, Indiana, Vermont, or the District of Columbia, nor has he made investigations of plaintiff

in such states or in the District of Columbia.

Defendant Dalton made three trips to Michigan in connection with the board's investigation of plaintiff or in preparation for plaintiff's hearing before the board. Except for these three trips to Michigan, defendant Dalton never communicated, either orally or in writing, with the medical licensing boards, or members thereof, of any other state, or with prospective employers or associates of plaintiff.

None of the defendants knowingly conveyed false information concerning plaintiff, nor directed, authorized, or acquiesced in the conveyance by anyone else of any false information concerning plaintiff to anyone. None of the defendants falsified records concerning plaintiff, nor directed, authorized, or acquiesced in the falsification by anyone else of any records concerning plaintiff.

Defendant Tormey on one occasion wrote a letter in which he made the misstatement that plaintiff had been found guilty of bribing a judge. He subsequently wrote to the addressee of the first letter stating that he had erred in making that statement.

During March, 1968, LaVerne Stordock, who was at that time the investigator for the Wisconsin State Board of Medical Examiners and is now deceased, traveled to the State of Michigan for the purpose of making an investigation of plaintiff with respect to plaintiff's pending application for relicensure in the State of Wisconsin. Neither defendant Ross, Henney, Zach, Custer, Satory, Twohig nor Withrow has any personal knowledge as to what Stordock did while he was in the State of Michigan, or the manner in which he conducted the investigation which he had been directed to make. Stordock was directed simply to make an investigation with respect to plaintiff's activities in the State of Michigan. Neither defendant Ross, Henney, Zach, Custer, Satory, Twohig, nor Withrow authorized, directed or acquiesced in the preparation of any misleading reports by Stordock.

Defendant Lawton was not a member of the State Board of Medical Examiners in 1968. He has no knowledge whatsoever of the said trip taken by Stordock to Michigan.

## OPINION

Construed liberally, the plaintiff's first cause of action may be read as incorporating the specific allegations that defendants, or some of them, or one of them, defamed him, and thereby violated his civil rights under color of state law by:

1. Gratuitously and from improper motives sending out accurate information about him to persons and agencies in other states who had made no request therefor.

2. Sending out false information about him to persons and agencies in other states who may or may not have requested information. (Such false information allegedly included matters not developed at the relicensure hearings, as well as the allegedly false results of those hearings.)

3. Participating in the falsification of investigative reports and other documents concerning him.

██ It is inescapable that as to the first cause of action, all defendants except Dalton, Tormey, and Pressentin are entitled to summary judgment in their favor on the basis of the undisputed facts that none of those other defendants communicated in any way with any persons in any other state about plaintiff, and that none of them directed, authorized, or acquiesced in the falsification of any records concerning him.

Except for the question of Statute of Limitations, which is dealt with hereinafter, on the present state of the record it is equally clear that the motion for summary judgment of defendants Dalton, Pressentin, and Tormey is not

sound with respect to plaintiff's first cause of action. It is apparent, from the affidavits of defendants Torney and Dalton, that they did convey information concerning plaintiff to the licensing boards or to members of licensing boards of at least one other state, in Dalton's case, and of several states, in Tormey's case. Pressentin does not disclaim oral communication in his affidavit. Whether the information conveyed was false, improperly disseminated, or otherwise grounds for a finding against these defendants, in the absence of a limitations' bar, should be determined at a trial.

### Second Cause of Action

For plaintiff's second cause of action, he alleges that all the defendants conspired to perform all of the defamatory actions he alleges in the first cause. He does not set forth any specific facts which would tend to establish a conspiracy. In their answers to the complaint, defendants deny that they conspired to violate plaintiff's civil rights; and in their affidavits filed in support of this motion, each defendant avers that he never attempted in any way to prevent the licensure of plaintiff in any state other than Wisconsin; and at no time did he ever attempt, in any way, to preclude plaintiff's employment anywhere, or to discredit plaintiff with potential employers, associates, or anyone else.

Defendants also submit the deposition of Michael L. Sanfelippo, M.D., taken by the plaintiff, in which Dr. Sanfelippo testified that he was a good friend of plaintiff; that he had been a member of the Wisconsin State Board of Medical Examiners from 1961 to 1965; and that he had never heard the subject of the resolution of plaintiff's relicensure applications discussed outside of official meetings of the board.

Plaintiff has not submitted any opposing affidavit or other material which would tend to support his allegation that a conspiracy existed among the defendants. The affidavit of his son

Perry Margoles does not do so. In his brief, plaintiff argues that many materials show individual malice against him on the part of certain defendants, and he suggests that the existence of a conspiracy may be revealed by (1) a letter to "Tom" from defendant Ross, dated October 28, 1965, suggesting a dinner meeting at a restaurant to discuss plaintiff's situation, because writings were not desirable; (2) a "stream" of newspaper clippings "sent around" by defendant Ross, with Ross's comments attached; (3) an undated, unsigned memorandum in the board's confidential file, which indicates that defendant Ross "seems to have been doing some investigating on his own about some of the matters involving Dr. Margoles"; and (4) an unsigned memorandum sent to certain board members, dated December 10, 1965, complaining about a lack of effectiveness by the board's investigator. Plaintiff has submitted what appear to be copies of these letters and memoranda, but they are neither certified nor identified by affidavit and cannot be said to be properly before the court on a motion for summary judgment. Even considering them so, however, they fall far short of even suggesting conspiracy. An essential element of conspiracy is agreement between two or more persons. The documents submitted by plaintiff at best suggest the possible mental attitude toward plaintiff of one person (with the exception of the memoranda which cannot be clearly attributed to anyone). These materials show no indication whatsoever of an agreement of any kind between two or more defendants here.

At the pleading stages of this proceeding, the court denied a motion by defendants to dismiss this cause of action for failure to state a claim upon which relief could be granted. Since the denial of that motion in 1970, the plaintiff has had more than an ample opportunity to develop some evidence of conspiracy, if such existed, through the taking of depositions, the propounding of interrogatories, and the production of documents;

but he has failed to produce any factual material on this issue in opposition to defendants' sworn statements. Plaintiff is not required to try a genuine issue of material fact on affidavits, but he can't make a genuine issue out of extravagant allegations for which he can develop no evidence whatsoever. It must be concluded that plaintiff has shown no genuine issue of material fact on his second alleged cause of action and summary judgment should be allowed for defendants on the charge of conspiracy.

### Third Cause of Action

In his third cause of action, plaintiff alleges that defendant Ross slandered him "on or about June 15, 1968." Defendant Ross denies that he slandered plaintiff as alleged. Defendant Ross also alleges that the interview during which the slanderous statement was alleged to have been uttered took place before June, 1968, and that the right of action set forth in plaintiff's complaint did not accrue within two years next before the commencement of the action. Wisconsin Statutes § 893.21(2) clearly provides that actions to recover damages for slander must be commenced within two years, and this action was filed June 11, 1970.

■ The record does not reveal the precise date of the subject interview. The deposition of the interviewer, Margaret E. Bauman, is before the court, and Ms. Bauman testified that the interview took place in late May or in June of 1968, but that she could not recall the specific date. She produced a typed draft of a proposed news article (which was not published), dated June 14, 1968, which she stated she prepared sometime after her interview with defendant Ross. The burden is on defendant Ross to establish that the interview took place prior to June 11, 1968, if he wishes to rely on the affirmative defense of the statute of limitations. A genuine issue is clearly present as to that material fact on this possible defense.

With respect to statements made during the Bauman-Ross interview, there are also genuine issues of material fact. Dr. Ross denies slanderous statements under oath. The Bauman deposition, while far from precise, does indicate that defendant Ross may have made statements about plaintiff which could be considered slanderous on the matter of possible abortions. If this third cause of action is not barred by the statute of limitations, trial is necessary to resolve issues over what was said, and such issues are both genuine and material.

### The Applicable Statute of Limitations

■ No federal limitation having been established, it is clear that actions brought pursuant to Section 1983 of Title 42, United States Code, are limited by the state limitations on the closest analogous state tort action. *O'Sullivan v. Felix*, 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980 (1914); *Jones v. Jones*, 410 F.2d 365 (7 Cir. 1969). *See also Johnson v. Railway Express Agency*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (decided May 19, 1975), affirming 6 Cir., 489 F.2d 525.

It is clear that the alleged injury for which plaintiff seeks redress in the first cause of action here, as well as in the third, is defamation of his character and reputation, which he says has prevented his obtaining licensure and employment in his profession to the extent he desires.

As noted above, the Wisconsin Statute of Limitation on "An action to recover damages for libel, slander * * *" is two years. Wisconsin Statutes § 893.-21(2). Another statute, however, permits within six years "An action to recover damages * * * for an injury to the character or rights of another, not arising on contract, except in case where a different period is expressly prescribed." Wisconsin Statutes § 893.-19(5). Which statute is applicable here is of major significance because of the long period over which allegedly actionable statements about plaintiff were made by defendant Tormey.

The Wisconsin Supreme Court has considered the alternative applicability of these two statutes in a case involving statements about a man in an alleged attempt to have him deported. The court found the two-year period, limiting libel and slander actions, to be applicable, rather than the longer six-year period on actions for injuries to "character or rights." *Cordova v. Gutierriez*, 23 Wis.2d 598, 128 N.W.2d 62 (1964). This seems eminently sound, especially because the latter statute expressly excepts cases where another period is prescribed, as for libel or slander here.

It is just not possible to make plaintiff's first cause of action anything but an action for damages arising from false and derogatory statements, which is classic libel or slander. The federal action made possible by the civil rights statute doesn't change the nature of the alleged injury in any way. Accordingly, it must be held that plaintiff will be limited in his proof at trial, on his first cause of action, to communications by defendants Dalton and Tormey, which occurred on or after June 11, 1968, two years before this action was filed. Since it is clear that defendant Pressentin was not employed by the Board after December 1, 1965, and could not therefore have taken any relevant action under color of state law within the limitations' period, the motion for summary judgment must be allowed as to him on the ground of the Statute of Limitations.

### Fourth Cause of Action

In his fourth cause of action, set up by the amended complaint, plaintiff attacks the fairness and validity of the 1969 hearing accorded him by defendants on his application for relicensure in Wisconsin. He says he has been denied procedural due process of law. The answer of all defendants, as lately amended with leave of court, sets up *res judicata* as complete affirmative defense to this alleged forth cause of action.

In argument against the present motion for summary judgment, plaintiff says, in substance, that defendants withheld from him favorable evidence, that they relied on evidence which they knew was disputed by other evidence, and that they misinterpreted a suggestion that he wanted a Wisconsin license only to help get one in Illinois, and that he would surrender a Wisconsin license, if granted, when that was accomplished.

The validity of plaintiff's 1969 hearing before the Board was the subject of the Wisconsin Supreme Court's decision in *Margoles v. State Board of Medical Examiners*, 47 Wis.2d 499, 177 N.W.2d 353 (1970). That case came there on appeal pursuant to Wis.Stat. § 227.21, to review a Dane County, Wisconsin, Circuit Court judgment affirming a decision of the Wisconsin State Board of Medical Examiners denying a favorable recommendation for restoration of plaintiff's license. The State Supreme Court decision is well written and highly illuminating and need not be repeated here.

The Wisconsin Supreme Court concluded that plaintiff had been afforded complete due process, in that a full hearing was held involving all the fair play procedures required. The court found that the records of earlier board proceedings in 1965 and in 1967 had been made available to plaintiff and his counsel prior to the 1969 hearing; that the contents of the investigative report filed by LaVerne Stordock had been made known to plaintiff and to his counsel; and that plaintiff's counsel had given information "tending to refute every adverse statement or report given by Mr. Stordock." (Id. at 511, 177 N.W.2d at 359.) The court also found substantial evidence to support the board's findings, and that the findings supported the conclusions of law which justified the decision not to recommend plaintiff's relicensure.

Plaintiff argues here that the doctrine of *res judicata* is inapplicable because the state court case was in the

nature of an administrative review on the matter of licensure, while this case is a suit for damages, an "entirely distinct and separate" cause of action. However, this is simply not the test. The fourth cause of action asserted here is alleged denial of due process of law in the whole license proceeding. Whether "due process" actually was denied by the board with which defendants here are involved was clearly an issue which was presented to and carefully dealt with by the Wisconsin courts, including the Supreme Court of the State of Wisconsin in its 1970 opinion cited above. Plaintiff offers nothing to dispute that as a factual matter. Since plaintiff has previously been given a hearing, which was reviewed for fairness by a court of competent jurisdiction on the merits of the same issue he seeks to raise here, and he did not seek further review in that case, this court should not entertain, and indeed has no jurisdiction for, relitigation of that identical issue or cause of action.

The purpose of the doctrines of *res judicata* and collateral estoppel is to eliminate repetitious suits, resulting harassment of parties, and the consequent waste of judicial time.

> "The rule [of res judicata] provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' * * * Once a party has fought out a matter in litigation with the other party, he cannot later renew that duel." *Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 597–598, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948).

It is clear that the Wisconsin Supreme Court, in deciding upon the issue of whether the hearing afforded plaintiff due process, considered the requirements of the federal constitution as asserted by plaintiff. The choice in submitting this federal constitutional question to the Wisconsin Supreme Court was plaintiff's. He did not commence an action based on alleged violation of his civil rights after the hearing complained of, but, rather, sought review in the Circuit Court for Dane County, Wisconsin, followed by an appeal to the Wisconsin Supreme Court. Having chosen that method of approach in the courts of the State of Wisconsin, his clearly available remedy, if he believed that the Wisconsin Supreme Court was in error on the question of due process, was to petition the Supreme Court of the United States for certiorari. He did not do so. He now seeks to start over on the same issue at the trial level in the federal court system. That is not to be permitted.

The Supreme Court has stated in *England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 84 S. Ct. 461, 11 L.Ed.2d 440 (1964):

> "* * * that if a party freely and without reservation submits his federal claims for decision by the state courts, litigates them there, and has them decided there, then—whether or not he seeks direct review of the state decision in this Court—he has elected to forgo his right to return to the District Court." 375 U.S. at 419, 84 S.Ct. at 467.

That was simply reaffirmation of the rule of *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), also lately followed in *Hutcherson v. Lehtin,* 485 F.2d 567 (9 Cir. 1973).

The principles of those decisions on this point are controlling here. There exists no right to relitigate the same due process issue in this proceeding. The motion for summary judgment must be allowed as to the fourth cause of action on the ground of *res judicata*.

Accordingly, it is ordered as follows:

1. The motion for summary judgment on behalf of defendants Ross, Henney, Zach, Custer, Satory, Twohig,

Withrow, Lawton, and Pressentin with respect to the first cause of action alleged is allowed.

2. The said motion on behalf of defendants Dalton and Tormey with respect to said first cause of action alleged is denied, subject to limitation of proof to the two-year period prior to June 11, 1970.

3. The said motion with respect to the second cause of action involving alleged conspiracy by all defendants is allowed.

4. The said motion with respect to the third cause of action is denied.

5. The said motion with respect to the fourth cause of action alleged is allowed, through application of the doctrine of *res judicata*.

It is further ordered that the facts stated hereinabove as uncontroverted appear without substantial controversy within the meaning of Rule 56(d), F.R. Civ.P., and shall be deemed established upon trial herein, insofar as any such facts are material to remaining issues.