IN the MATTER OF the APPLICATION FOR ADMISSION TO the BAR OF Douglas CHILDS.

Supreme Court

*Undocketed. Argued March 2, 1981.—Decided March 31, 1981.*
(Also reported in 303 N.W.2d 663.)

For the petitioner there was oral argument by *Stuart G. Mondschein* of *Wheeler, Van Sickle, Anderson, Norman & Harvey, S.C.,* Madison.

For the respondent there was oral argument by *LeRoy L. Dalton,* assistant attorney general.

PER CURIAM. This matter comes before us in the form of a motion to reconsider an order entered by this court on November 21, 1980. That order denied the application of Douglas Childs for admission to practice law in this state by virtue of his failure to satisfy the moral character component of the requirements set forth in Supreme Court Rule SCR 40.02(2).

The facts which form the basis for this controversy are uncomplicated and undisputed.[1] In June of 1979, Douglas Childs applied for admission to practice law in the State of Wisconsin. In that application he failed to answer a question relating to the disposition of previous attempts to be admitted to the bar in another jurisdiction. Upon specific request, he supplied information regarding several unsuccessful attempts to take the Indiana State Bar Examination. This information was provided in the summer of 1979. The applicant successfully completed the Wisconsin Bar Examination in February of 1980. Subsequently, while reviewing the application documents submitted by Childs pursuant to its responsibility under SCR 40.04(1), the Board of Attorneys Professional Competence detected an apparent irregularity and initiated an investigation into the matter. This investigation was turned over to the Board of Attorneys Professional Responsibility and the applicant Childs was informally notified of this development. He was request-

---

[1] Although there is no formal record in this case, the facts are set forth in various materials which have been supplied to the court. The parties agree that these materials accurately reflect the operative facts involved in this proceeding.

ed to execute a release so that additional materials relating to events surrounding one of the previous Indiana State Bar examinations could be made available to the investigatory body. The release was executed by Childs. On May 7, 1980, the applicant received a letter from the board which informed him that the investigation was continuing and that the purpose of the investigation was to evaluate the applicant's moral character.

On September 30, 1980, the Board of Attorneys Professional Responsibility advised the Board of Attorneys Professional Competence that an investigation had been completed and that its recommendation was in favor of admitting the applicant to the bar.

In a letter dated October 1, 1980, the applicant Childs was informed that the Board of Attorneys Professional Competence had received the recommendation of the Professional Responsibility Board. Childs was further informed that the matter of his application would be taken up at the next Professional Competence Board meeting and that he would be promptly informed of the board's decision once it had been rendered. No meeting date was specified, nor was the applicant invited to attend the proceeding.

A memorandum which is dated November 17, 1980 and which was filed with this court indicates that at the meeting held by the Professional Competence Board it was decided that the recommendation of the Board of Attorneys Professional Responsibility should be rejected. It was concluded that the applicant lacked the requisite moral character to warrant certification. In a letter dated November 17, 1980, this was communicated to Childs prior to his receipt of the order entered by this court denying his application to be admitted to the practice of law. The letter did not specify the reasons for this determination.

The question before us is whether the due process clause of the federal constitution requires that a bar admission applicant who is refused certification on grounds of moral character be notified of the grounds for the board's conclusion and be given an opportunity to respond to or rebut that determination.

Before discussing the merits of this controversy, it is necessary to examine the Supreme Court Rules which define the role of the Board of Attorneys Professional Competence (board) in the admission of applicants to the practice of law.[2] According to ch. 40 of the Rules, no person may be admitted or licensed to practice law in this state unless he or she qualifies under one of the provisions of SCR 40.02. Sub. (2) of SCR 40.02 provides:

"ADMISSION ON CERTIFICATE. Every person 21 years of age or over and of good moral character who is a citizen of the United States and a resident of this state and a graduate of any law school which at the time of his or her graduation was approved by the American bar association shown by the record of the clerk of the supreme court, upon the production of the certificate of the board of attorneys professional competence, shall be admitted to practice law in this state by the supreme court. . . ."

Although a candidate for admission to the bar shoulders the burden of proof to establish his or her fitness for the practice of law, it is the board which is charged with the duty of examining the applicant's qualifications. *See* SCR 40.04(1) and (2). This examination of general qualifications of the candidate extends into several areas, and it includes an inquiry into the moral character of the

---

[2] The Supreme Court Rules relating to admission of attorneys to the practice of law have been amended by an order dated December 29, 1980, and are reported at 99 Wis.2d xxxix, 299 N.W. 2d lxvii (1980). These amendments are not applicable to this proceeding.

applicant.[3] If the board is not satisfied that the applicant possesses the requisite moral character, it will decline to certify the person to the court, and he or she will not qualify for admission to the bar.

Under the Supreme Court Rules there are no provisions requiring the board to notify the applicant of its determinations and conclusions regarding his or her moral character. There are no rules requiring that the applicant be given an opportunity to rebut or respond to the board's determination.

It is claimed that this procedure is constitutionally unsound. The applicant argues that as a matter of due process of law he was entitled to be notified of the results of the board's investigation and that he had a right to challenge the basis of the board's conclusions. We agree with the applicant.

Both the board and the applicant maintain, and we think correctly so, that this matter must be decided in light of the United States Supreme Court decision in *Willner v. Committee on Character*, 373 U.S. 96 (1963). In that case Willner had passed the New York bar examination, and under the applicable rules was entitled to be admitted to practice law if the New York Appellate Division court was ". . . 'satisfied that [he] possess[ed] the character and general fitness requisite for an attorney and counsellor-at-law.' " *Id.* at 98. Several proceedings were held during which time the moral fitness of the applicant was considered. Willner was not allowed to actively participate in these proceedings. *Id.* at 101. When it was decided that Willner was not fit to practice law he was not informed of the grounds upon which that determination was reached. *Id.* at 100-101.

Quoting favorably from the decision in *Goldsmith v. Board of Tax Appeals*, 270 U.S. 117 (1926), the court

---

[3] *See* SCR 40.05. Under our rules the board may request the Board of Attorneys Professional Responsibility to conduct the investigation. *See* SCR 22.29.

wrote that the procedure for certification of moral fitness must involve ". . . 'such notice, hearing and opportunity to answer for the applicant as would constitute due process.'" 373 U.S. at 103. It was noted that the applicant Willner was never apprised of the reasons underlying the determination of his unfit moral character. The court concluded that Willner "was clearly entitled to notice of and a hearing on the grounds for his rejection. . . ." *Id.* at 105. His rejection as a candidate for admission to the practice of law ran afoul of the due process requirements.

The parties' positions vary regarding the application of the *Willner* rationale to the facts of this case. The board argues that the substance of the *Willner Case* has been complied with. The board takes the position that Childs was not certified because he failed to fully disclose all relevant information on his initial application. It is argued that this determination was made on the face of the documents which he supplied. The board claims that when Childs released the Indiana bar exam materials to it after their initial investigation, the applicant "admitted" that he had not made a full disclosure on his earlier applications. The board concludes that the partial disclosure on the original application as evidenced by the release of additional materials supports the conclusion of the board without the need for an evidentiary hearing. It is further argued that the applicant was aware of the subject matter of the investigation and that if he wanted to provide an explanation he was not prevented from doing so.

The board's argument is not persuasive in several respects. At the outset we note that the board's determination as set forth in its November 17th memorandum is not clearly predicated upon the applicant's nondisclosure of material facts. Secondly, even if it were so predicated, the board still has failed to avoid the impact of the

*Willner* rule. Under *Willner,* a hearing is unnecessary when the documents supplied by the applicant give rise to grounds for non-certification. In this case, however, we are not involved with an applicant who after investigation admits that he misrepresented or failed to disclose material facts in an earlier application. In this matter the applicant merely released materials to the board which the board thought necessary to its inquiry. This release is not equivalent to an admission of misrepresentation or nondisclosure. Finally, even if such an admission were contained in this record, the board's position would be untenable. Assuming that the investigation of the board developed evidence to warrant its conclusion that the applicant failed to make a full disclosure to it, this is not to say that the board may make its determination without notifying the applicant of the reasons for its conclusion and without giving him an opportunity to respond.

The applicant was entitled to be apprised of the reasons which justified the board's decision and he was entitled to an opportunity to respond to that determination. This, we hold, is the minimum required by the due process clause. However, we conclude that due process considerations do not mandate a full blown adjudicatory hearing as an automatic consequence of the board's refusal to certify an individual's moral character.

The invocation of the procedural requirements of the due process clause does not mechanically result in a full dress adversary proceeding.[4]

---

[4] The notion that procedural due process may require less than historic formality in the context of quasi-judicial administrative proceedings is a developing trend in the law. *See* Tribe American Constitutional Law, Sec. 10–15 (1978). Our decision in *Margoles v. State Board of Medical Examiners,* 47 Wis.2d 499, 177 N.W.2d 353 (1970), illustrates the more traditional equation of a formal adjudicatory hearing with the right to due process.

"The function of legal process, as that concept is embodied in the Constitution, and in the realm of fact-finding, is to minimize the risk of erroneous decisions. Because of the broad spectrum of concerns to which the term must apply, flexibility is necessary to gear the process to the particular need; the quantum and quality of the process due in a particular situation depend upon the need to serve the purpose of minimizing the risk of error." *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 13 (1979).

Although the majority opinion in *Willner v. Committee on Character, supra,* 373 U.S. at 103–04, can be read broadly for the proposition that an adversary proceeding is necessary whenever the board refuses to certify an applicant, we do not so read the opinion.

Whether or not an adjudicatory hearing is required will depend upon factors such as the nature and source of the information utilized by the board in making its determination and the existence of a dispute as to material facts which support the board's refusal to certify. The constitutional requirements in the context of a board certification proceeding were discussed by Justice GOLDBERG in his concurring opinion in the *Willner Case, supra,* 373 U.S. at 107–08:

". . . in all cases in which admission to the bar is to be denied on the basis of character, the applicant, at some stage of the proceedings prior to such denial, must be adequately informed of the nature of the evidence against him and be accorded an adequate opportunity to rebut this evidence. As I understand the opinion of the Court, this does not mean that in every case confrontation and cross-examination are automatically required. It must be remembered that we are dealing, at least at the initial stage of proceedings, not with a court trial, but with a necessarily much more informal inquiry into an applicant's qualifications for admission to the bar. The circumstances will determine the necessary limits and incidents implicit in the concept of a 'fair' hearing. Thus, for example, when the derogatory matter appears from

information supplied or confirmed by the applicant himself, or is of an undisputed documentary character disclosed to the applicant, and it is plain and uncontradicted that the committee's recommendation against admission is predicated thereon and reasonably supported thereby, then neither the committee's informal procedures, its ultimate recommendations, nor a court ruling sustaining the committee's conclusion may be properly challenged on due process grounds, provided the applicant has been informed of the factual basis of the conclusion and has been afforded an adequate opportunity to reply or explain. Of course, if the denial depends upon information supplied by a particular person whose reliability or veracity is brought into question by the applicant, confrontation and the right of cross-examination should be afforded. Since admission to the bar is ultimately a matter for the courts, there is ample power to compel attendance of witnesses as required."

A similar view has been adopted by a number of state courts. *See, e.g., In re Application of Dinan,* 157 Conn. 67, 71-72, 244 A.2d 608 (1968) ; *In re Monaghan,* 126 Vt. 53, 56, 222 A.2d 665 (1966). *See also Application of Kellar,* 81 Nev. 240, 401 P.2d 616 (1965).

We conclude that the due process clause mandates that the Wisconsin bar applicant be afforded at least some procedural safeguards. After submitting an application and after the board has conducted an initial investigation of moral character, the applicant is entitled to be informed in writing of an adverse determination regarding his or her fitness to practice law. This notice must specify the grounds for the board's refusal to certify the candidate. The applicant must then be given a reasonable time to respond to this determination and to rebut its conclusions. Initially, this response should be in writing. It may be accompanied by supporting papers, and it should specify whether a hearing is requested. The board may then reconsider its original conclusion. If it remains

unconvinced of the candidate's moral fitness after an examination of these materials, and if the circumstances of the dispute so warrant, the board should order an adjudicatory hearing. If it is determined that a hearing is not required, the applicant should be notified of the reasons for this conclusion.

The situation presented by the present case requires that this court's order of November 21, 1980 be vacated. The applicant is entitled to be notified of the grounds for the board's refusal to certify his moral fitness and he must thereafter be given an opportunity to respond to the board's determination.

The candidate argues that we should amend the original order so as to specify that he need not retake the bar exam if at some future date he reapplies for admission to the bar. This question is not appropriate for determination at this stage of the proceedings since we have vacated the order which is sought to be amended.

The order of November 21, 1980 is vacated and the cause is remanded to the Board of Attorneys Professional Competence for further proceedings not inconsistent with this opinion.

ABRAHAMSON, J., took no part.