**In the Matter of the Application of Albert J. FAULCONBRIDGE to the Bar of North Dakota, Petitioner**

**v.**

**NORTH DAKOTA STATE BAR BOARD, Respondent.**

**Civ. No. 910346.**

Supreme Court of North Dakota.

April 27, 1992.

Jean V. Faulconbridge (argued), Omaha, Neb., for petitioner.

McGee, Hankla, Backes & Wheeler, Ltd., Minot, for respondent; argued by Richard H. McGee II.

PER CURIAM.

Albert James Faulconbridge, M.D., petitioned this court to review the negative recommendation of the North Dakota State Bar Board on his application for admission to practice law. We deny his petition.

Faulconbridge applied for admission to the Bar Board in December 1990, and took the bar examination in February 1991. For admission, an applicant must achieve a combined score of 130 (based on the equi-percentile scoring method)[1] on the Multistate Bar Examination (MBE) and on the essay examination, and a score of 80 on the Multistate Professional Responsibility Examination (MPRE).[2] Faulconbridge passed

---

**1.** The "equi-percentile" scoring method is explained in *McGinn v. State Bar Board of the State of North Dakota,* 399 N.W.2d 864, 865 n. 1 (N.D.1987).

**2.** Before the February 1991 Bar Examination, the State Bar Board notified the applicants about the subjects of the essay exam, and about the grading policies:

Applicants for the February 1991 North Dakota Bar Examination will be required to take the Multistate Professional Responsibility Ex-

amination, the Multistate Bar Examination *and essay exam consisting of six subjects: Business Associations; Commercial Transactions; Practice and Procedures; Equity; Wills, Estates and Trusts; and Family Law.* The State Board of Bar Examiners will utilize the equi-percentile method of combining the MBE and essay scores. By that method, the converted essay score is combined with the MBE scaled score and the result averaged. All applicants for the February 1991 North Dakota

the MPRE, but received an MBE score of 129.00, a converted essay score of 120.00, and a combined score of 124.50.

Although not a passing score, Faulconbridge's combined score was high enough that his essay answers were automatically regraded. *See* n. 2. Regrading of his essay examination resulted in a revised converted essay score of 123.33, and a revised combined score of 126.17. This still was not a passing grade.

Faulconbridge was notified of his failure to pass. He requested a formal hearing before the Bar Board under North Dakota Admission to Practice Rules, Rule 6(B). North Dakota Century Code, Court Rules Annotated (1992–1993) at 900. At the hearing, Faulconbridge successfully moved the Bar Board to regrade his essay answers again. This regrading by the members of the Bar Board resulted in another revised score, based on ten possible points per question:

Question 1 — 5.0
Question 2 — 5.0
Question 3 — 3.0
Question 4 — 5.0
Question 5 — 6.0
Question 6 — 4.0

Essay Average—4.70
Converted Essay—129.50
MBE Scaled Score—129.00
Combined Score—129.25

Because Faulconbridge still failed, the Bar Board adhered to its negative decision on licensure.

Pursuant to Rule 6(C) of the North Dakota Admission to Practice Rules, Faulconbridge petitioned for review by this court. He claims that the model answer for essay Question 6 is legally incorrect and, therefore, unreliable. Faulconbridge argues that the requirement that an applicant's essay answer agree with the model answer for this question is not rationally connected with that applicant's ability to practice law. Faulconbridge urges that his score for Question 6 be thrown out, and that his essay score be redetermined by averaging the five remaining essay scores.

■ After receiving the report and recommendations from the Bar Board, we authorize licensure of those applicants qualified to practice law. NDCC 27–11–19. To gain admission despite a negative recommendation by the Bar Board, an applicant must prove by a preponderance of evidence that the applicant qualifies for admission. North Dakota Admission to Practice Rules, Rule 6(C)(4); *McGinn v. State Bar Board of the State of North Dakota,* 399 N.W.2d 864 (N.D.1987). An applicant challenging the effectiveness of a bar examination has the burden of establishing its unreliability. *Id.* This court will neither regrade a bar examination, nor set aside an examination result, without proof that the Bar Board acted arbitrarily and unreasonably.

■ Faulconbridge argues that the model answer to Question 6 is legally incorrect because that answer is based on general principles of equity, whereas a legally correct answer must be based on the Uniform Commercial Code. Faulconbridge contends that reference to the U.C.C. is not just "an option" but, rather, is required because "the U.C.C. displaced common law and equitable provisions on issues specifically addressed by the U.C.C." Since the model answer is the standard for grading, Faulconbridge argues that it is unreliable because it is incorrect and there is "no provi-

Bar Examination will be required to attain a final combined score of at least 130 on the MBE and essay portions of the examination and at least a scaled score of 80 on the Multistate Professional Responsibility Examination. Each essay exam will be graded on the basis of one to ten.
After the essay and the Multistate Bar Examination scores have been combined by the National Conference of Bar Examiners, all essay papers of applicants receiving at least a scaled score of 125 on the MBE and at least a combined score of 120 will automatically be regraded. If regrading changes any of the essay scores, a new essay average will be determined based on the highest score obtained in any subject. The converted essay score will be combined with the MBE scaled score and averaged to determine the new combined score. This score will be deemed final and the results will be released to the applicant. The Review Procedures, Rule 6, Admission to Practice Rules, will be available to applicants who receive a negative recommendation. (Our emphasis).

sion for, nor instruction to ... check the Model Answers before grading the exams."

The Bar Board responds that it fairly administered and graded the essay examinations, and that the essay exams are "an accurate reflection of [Faulconbridge's] fitness to be licensed to practice law." All applicants are, as a matter of course, given advance notice of the areas of law to be tested by the essay examination. *See* n. 2. The applicants were forewarned that six areas of law would be covered by this essay test. Commercial Transactions, the subject of Question 3, was tested during the forenoon session, along with Question 1, Practice and Procedure, and Question 2, Wills, Estates and Trusts. From the advance notice, the Bar Board says, Faulconbridge should have been aware that the three remaining subjects, Business Associations, Family Law, and Equity, would be tested by Questions 4, 5, and 6 during the afternoon session.

The Bar Board asserts that Faulconbridge's argument, and his answer to Question 6, "overlooked the vast body of equity law which for years has been legal doctrine in this state." We agree.

Some principles of equity are incorporated into the Uniform Commercial Code. *First Bank of North Dakota (N.A.) v. Pillsbury Co.*, 801 F.2d 1036 (8th Cir.1986). Other principles of equity supplement the U.C.C. unless explicitly displaced. NDCC 41-01-03; *Red River Commodities, Inc. v. Eidsness*, 459 N.W.2d 805 (N.D.1990). Faulconbridge received credit for recognizing some U.C.C. principles that were relevant to Question 6, garnering four of the possible ten points for his answer. He largely failed to recognize the relevance of equity law.

The Bar Board points out that Faulconbridge's score of four points on Question 6 was "internally consistent with [his] overall essay test performance," at 86% of his final

average. Faulconbridge's essay scores indicate that his two lowest scores, three points and four points, were on the Commercial Transactions and Equity questions, respectively. Inferentially, Faulconbridge's difficulty lies in his lack of comprehension of the interplay between the Uniform Commercial Code and the law of equity, not in the model answer.

We conclude that there is no evidence to show that the procedure employed by the Bar Board to test Faulconbridge's qualifications was unreliable, or that his essay examination was graded arbitrarily or unreasonably. The essay examination had a rational connection to Falconbridge's ability to practice law.

Accordingly, we refuse to invalidate the essay examination or to regrade any of Falconbridge's answers, and we accept the negative recommendation of the Bar Board. We encourage Dr. Faulconbridge to exercise his option of retaking the bar examination, and we wish him success in that endeavor.

ERICKSTAD, C.J., MESCHKE and VANDE WALLE, JJ., VERNON R. PEDERSON, Surrogate Judge, and LeCLERC, District Judge, concur.

VERNON R. PEDERSON, Surrogate Judge, sitting due to the disqualification of LEVINE, J. LeCLERC, District Judge, sitting as a member of the court to fill the vacancy created by the resignation of Justice H.F. GIERKE III. JOHNSON, J., not being a member of this Court at the time this case was heard did not participate in this decision.