539 N.W.2d 865 (1995)
In the Matter of the APPLICATION OF Timothy C. LAMB to the Bar of North Dakota.
Timothy C. LAMB, Petitioner,
v.
NORTH DAKOTA STATE BAR BOARD, Respondent.
Civ. Nos. 940215, 950004 and 950285.
Supreme Court of North Dakota.
November 30, 1995.
*866 Timothy C. Lamb, Grand Forks, pro se.
James S. Hill, of Zuger Kirmis & Smith, Bismarck, for respondent.
NEUMANN, Justice.
Under Rule 8(C), North Dakota Admission to Practice Rules, Timothy C. Lamb has petitioned for review of the State Bar Board's negative recommendations on his applications for admission to practice law. We concur with the Bar Board's recommendations and deny the petitions.
Lamb first took the bar examination in July 1993. Lamb failed that examination, but did not appeal. Lamb also took the bar examination in February 1994, July 1994, and February 1995. Each of those examinations required a combined score of at least 260 on the Multistate Bar Examination (MBE) and essay portions. On the February 1994 examination, Lamb received a converted essay score of 123.360, an MBE scaled score of 103, and a combined score of 226.360. On the July 1994 examination, Lamb received a converted essay score of 129.430, an MBE scaled score of 125, and a combined score of 254.430. On the February 1995 examination, Lamb received a converted essay score of 130, an MBE scaled score of 114, and a combined score of 244. This case consolidates three appeals from negative Bar Board recommendations following Lamb's unsuccessful bar examinations in February 1994, July 1994, and February 1995.
"The United States Constitution does not create a right to practice law." Matter of Roberts, 682 F.2d 105, 108 n. 3 (3rd Cir.1982). A state can require high qualification standards for admission to the bar, "but any qualification must have a rational connection with the applicant's fitness or capacity to practice law." Schware v. Board of Bar Examiners, 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796, 801-02 (1957). Lamb has a heavy burden:
"To gain admission despite a negative recommendation by the Bar Board, an applicant must prove by a preponderance of evidence that the applicant qualifies for admission. North Dakota Admission to Practice Rules, Rule 6(C)(4); McGinn v. State Bar Board of the State of North Dakota, 399 N.W.2d 864 (N.D.1987). An applicant challenging the effectiveness of a bar examination has the burden of establishing its unreliability. Id. This court will neither regrade a bar examination, nor set aside an examination result, without proof that the Bar Board acted arbitrarily and unreasonably."
Faulconbridge v. North Dakota State Bar Board, 483 N.W.2d 780, 781 (N.D.1992).
*867 In reviewing Bar Board decisions, we look for a rational connection between a qualification standard and the applicant's fitness or capacity to practice law. Schware v. Board of Bar Examiners, supra. Lamb contends we should employ a "heightened" or "intermediate" level of scrutiny, rather than a "rational basis" level of scrutiny, and should shift the burden of proof to the Bar Board because (1) this court is, in effect, reviewing its own policy; (2) the Bar Board deprived Lamb of due process because he did not receive a fair and impartial hearing; and (3) the Bar Board denied evidence Lamb requested.
In reviewing Bar Board decisions, we are, in a sense, reviewing our own policies, which were adopted to protect the public. The purpose of the examination is to protect the public. Dinger v. State Bar Bd., 312 N.W.2d 15 (N.D.1981). Neither employing a heightened level of scrutiny in reviewing Bar Board decisions, nor shifting the burden of proof from the applicant to the Bar Board, would advance the purpose of protecting the public, and in fact might undercut that purpose. We therefore decline to change the level of scrutiny on review or to change the burden of proof.
Lamb asserts he was deprived of due process because (1) the Bar Board hearings were not presided over by a hearing officer, (2) the Bar Board did not tell him at the May 1994 hearing how it derived its passing score, (3) the Board advised him at the beginning of the November 1994 hearing that there was a time limit for the hearing, and (4) the Board failed at the November 1994 hearing to define "practice and procedure" as Lamb requested. The due process clause requires that the Bar Board "employ fair procedures in processing applications for admission to the bar." Whitfield v. Illinois Bd. of Law Examiners, 504 F.2d 474, 478 (7th Cir.1974). The due process clause does not require "a full dress adversary proceeding." Matter of Childs, 101 Wis.2d 159, 303 N.W.2d 663, 667 (1981). Lamb had reasonable opportunities to present and examine witnesses, to present evidence, to respond to evidence presented against his applications, and to argue his case. The Bar Board employed fair procedures. We are not persuaded that, individually or collectively, the Board's actions deprived Lamb of due process. Nor are we persuaded that the Board acted arbitrarily and unreasonably in denying Lamb's request at the November 1994 hearing that the Board give him "the breakdown of the scoring records in the July 1994 bar exam of the essay graders."
Lamb contends he should be certified to practice law despite the Bar Board's negative recommendations because the bar examinations he took were unreliable.
In a report presented to the Bar Board, John Delane Williams, Ph.D., a statistician, opined of the February 1994 bar examination:
"The size of the pool (13), the use of the conversion process utilizing MBE scores from that small pool of applicants, and the questionable reliability of the essay examination, together with the lack of articulation of a rationale for the pass/fail cutoff score, would suggest that the pass/fail results are not sufficiently reliable."
Williams concluded "the February 1994 North Dakota Bar Exam is not reasonably reliable to determine `minimum competency' of the examinees." Williams was not shown to have any particular expertise in the area of bar examinations and was primarily concerned with the small number of examinees.
Lamb also relies on the following language in a letter from Julia C. Lenel, Ph.D., a bar examination expert, for the proposition that "the North Dakota bar exam given in February 1994 was unreliable due to statistical measurement validity errors:"
"[W]ith very small numbers of examinees such as the February pool in North Dakota, even the mean [score] can be unstable. One extremely low or extremely high score can exert a strong influence on the mean. That being the case, the procedure of equating the `average essay score' to the `average MBE score' is somewhat problematic *868 no matter which conversion method [is] used. It might be better to make pass/fail decisions independently on the two tests and then decide what rule is to be used to combine those two pass/fail decisions."
While Lenel was concerned with the small number of examinees in the February 1994 examination, she did not express the view that the Bar Board's February 1994 pass/fail policy was not reliable.
We have considered Lamb's arguments regarding the grading of his essay examination answers. As we said in Faulconbridge, "[t]his court will neither regrade a bar examination, nor set aside an examination result, without proof that the Bar Board acted arbitrarily and unreasonably." Faulconbridge v. North Dakota State Bar Board, supra, 483 N.W.2d at 781. Lamb has not met that burden. We decline his invitation to analyze the examination questions and regrade his answers. Lamb relies on the opinions of four practicing attorneys whom he has selected to act as surrogate graders of his answers. Such opinions simply are not evidence of unreliability.
Lamb asserts as to Question No. 2 of the July 1994 essay examination that "evidence" is not part of "practice and procedure." Rules of evidence fall within "practice and procedure." Article VI, § 3, N.D. Const., provides in part: "The supreme court shall have authority to promulgate rules of procedure ... to be followed by all the courts of this state." "This authority includes the promulgation of rules for the receipt and admission of evidence." City of Fargo v. Ruether, 490 N.W.2d 481, 483 (N.D. 1992). "`Procedure' includes pleading and evidentiary matters." Arneson v. Olson, 270 N.W.2d 125, 131 (N.D.1978). Compare North Dakota Courts Annual Report, p. 37 (1993) ("The joint procedure committee is responsible for ... improvement of North Dakota's rules of pleading, practice, and procedure, including ... rules of evidence."); Ralph J. Erickstad, State of the Judiciary Message, Fifty-third Legislative Assembly, Addendum at 30 (January 6, 1993)("The Joint Procedure Committee studies and revises the state rules of ... evidence, and other rules of pleading, practice and procedure."). The Bar Board did not act arbitrarily or unreasonably in including an evidentiary issue in a practice and procedure question.
The instructions for the July 1994 essay examination stated in part:
"An answer should demonstrate your ability to analyze the facts presented by the question, to select the material from the immaterial facts, and to discern the points upon which the case turns. It should show your knowledge and understanding of the pertinent principles and theories of law, their relationship to each other, and their qualifications and limitations. It should evidence your ability to apply the law to the facts given, and to reason logically in a lawyer-like manner to a sound conclusion from the premises adopted. Try to demonstrate your proficiency in using and applying legal principles rather than a mere memory of them."
Lamb contends the examination instructions were not properly applied, because the answers were scored with a holistic, rather than an analytic, method.[1] As Lenel (footnote 1) noted at 17: "Both analytic and holistic scoring methods have been shown to be reliable methods for scoring essays when they are well-designed and readers receive appropriate training." We are unable to conclude the instructions were not properly applied.
Lamb contends the cutoff score of 260 on the examinations has no adequate foundation. Lamb asserts: "Obviously, over *869 the years, members of the board have changed, scores have changed, and scoring methods have changed. These changes have undoubtedly affected the reliability of the cutoff score." Perhaps, as Lamb has argued, the cutoff score should be "validated from time to time." However, the Board explained at the hearing that it had "presented that number to the people at the National Conference of Bar Examiners, [and] asked them of their opinion as to whether or not we are right or wrong." We are unable to conclude the cutoff score used in the examinations had no adequate foundation and was, therefore, unreliable.
Lamb has suggested that if a Standard Error of Measurement value were applied to his July 1994 score, he "would have probably passed, since he was within 2-3% of the cutoff score, and thus within the SEM `band.'" A finite line must be drawn somewhere. "[E]very test or examination, to have any value or significance, must have a passing line or standard that must be met." Dinger v. State Bar Bd., supra, 312 N.W.2d at 18.
We conclude Lamb has not shown by a preponderance of the evidence that the challenged bar examinations were unreliable or that the Bar Board acted arbitrarily and unreasonably. We, therefore, accept the Bar Board's negative recommendations and deny Lamb's petitions.
VANDE WALLE, C.J., and LEVINE, MESCHKE and SANDSTROM, JJ., concur.
NOTES
[1] There are two basic scoring methodsanalytic and holistic. Julia C. Lenel, The Essay Examination Part III: Grading the Essay Examination, The Bar Examiner, August 1990, at 16. "In analytic scoring, a model answer is prepared and then broken down into specific points or elements that a good answer should include." Id. "In holistic scoring, readers are instructed to read each answer rapidly and make judgments about its overall quality, without making counts of particular elements," and they are grouped by level of quality. Id.