IN the MATTER OF JUDICIAL DISCIPLINARY PROCEEDINGS AGAINST the Honorable Lawrence F. WADDICK, Washington County Circuit Court Judge.

WISCONSIN JUDICIAL COMMISSION, Complainant,

v.

The Honorable Lawrence F. WADDICK, Respondent.

Supreme Court

*No. 98–3075–J. Oral argument December 1, 1999.—Decided February 18, 2000.*

2000 WI 11

(Also reported in 605 N.W.2d 861.)

 

For the complainant there was a brief by *James C. Alexander*, Madison, for the Wisconsin Judicial Commission, and oral argument by *James C. Alexander* and *Thomas S. Sleik* and *Hale, Skemp, Hanson, Skemp & Sleik*, La Crosse.

For the respondent there was a brief by *James P. O'Neill* and *O'Neill, Schimmel, Quirk & Carroll, S.C.*, Milwaukee, and oral argument by *James P. O'Neill* and *Hon. Lawrence F. Waddick*.

¶ 1. PER CURIAM. We review, pursuant to Wis. Stat. § 757.91, the findings of fact and conclusions of law of the judicial conduct panel concerning the judicial misconduct of the Hon. Lawrence Waddick, circuit judge for Washington county, and the panel's recommendation that Judge Waddick be suspended from judicial office for 60 days as discipline for that misconduct. The misconduct consisted of Judge Waddick's recurring delay in deciding cases between 1991 and 1998, his filing of Certifications of Status of Pending Cases during that time that falsely represented that no cases were awaiting decision in his court beyond the prescribed period, and stating falsely to the Judicial Commission during an informal appearance in June 1996 that he had no cases awaiting decision beyond the prescribed period.

¶ 2. We determine that the appropriate discipline for Judge Waddick's judicial misconduct established in this proceeding is his suspension from judicial office for six months. Twice previously we have addressed a judge's delay in deciding cases and filing false statements concerning the status of pending

cases. One of those cases included the judge's making false statements to the Judicial Commission investigating misconduct allegations. Our opinions in those cases put all judges on notice of the importance of the timely disposition of judicial business in our courts and the seriousness with which we view a judge's false certification of pending case status and false representations to the Judicial Commission.

¶ 3. Notwithstanding that notice, from the beginning of his judicial career and for seven years, Judge Waddick persisted in delaying decisions in numerous cases and falsely certifying that he was current with the cases assigned to him, and when confronted with allegations of delay, he lied to the Judicial Commission that he had no cases undecided beyond the prescribed time period. Accordingly, a significant suspension from judicial office is called for, not only as a response to Judge Waddick's misconduct, but also as an emphatic statement to other members of the judiciary and to the public of the seriousness of such misconduct.

¶ 4. Judge Waddick was elected to the circuit court in 1990 and re-elected in 1996. He has not previously been the subject of a judicial disciplinary proceeding. The judicial conduct panel, composed of Court of Appeals Judges William Eich, Margaret Vergeront and Patience Roggensack, made findings of fact based on Judge Waddick's admission to the allegations of the Judicial Commission's complaint and on a stipulation of the parties.

¶ 5. In 1996, the Judicial Commission commenced an investigation into an allegation that Judge Waddick had delayed deciding a case and did not list that case on his Certification of Status of Pending Cases as pending beyond the 90-day period prescribed

in SCR 70.36(1).[1] Judge Waddick made an informal

[1] SCR 70.36 provides, in pertinent part:

**Judges' and circuit court commissioners' certification of status of pending cases.**

(1)(a) Every judge of a circuit court shall decide each matter submitted for decision within 90 days of the date on which the matter is submitted to the judge in final form, exclusive of the time the judge has been actually disabled by sickness. If a judge is unable to do so, within 5 days of the expiration of the 90-day period the judge shall so certify in the record of the matter and notify in writing the chief judge of the judicial administrative district in which the matter is pending, and the period is thereupon extended for one additional period of 90 days. . . .

(b) In the exercise of its superintending and administrative authority over all courts and upon written request from a chief judge, the supreme court may extend the period specified in par. (a) for decision in specific matters as exigent circumstances may require.

(2)(a) Within the first 10 days of each month every judge of a circuit court shall execute and file with the office of the director of state courts:

1. A certificate stating that there are no matters awaiting decision beyond the 90-day or, if extended by certification and notification, the 180-day period specified in sub (1)(a), but if the 90-day period has been extended by certification and notification, a copy of the certification and notification shall be attached to the certificate; or

2. If there are matters so pending, a certificate setting forth the name and docket number of each matter, the court in which it is pending, and the date on which it was submitted to the judge in final form.

(b) The office of the director of state courts shall send a copy of certificates listing pending matters to the chief judge of the judicial administrative district in which those matters are pending and shall notify the chief judge of a judicial administrative district of the failure of a judge within the district to file an certificate pursuant to this subsection.

(3) The director of state courts, pursuant to SCR 70.10, and the chief judge, pursuant to SCR 70.19(3)(a), shall assign judges as needed to take other steps for the timely disposition of judicial business to assist a judge who has filed a certificate under sub. (2)(a)2 or 3.

appearance before the Commission on June 27, 1996, at which he stated falsely that no other decisions were overdue and that his Certification of Status of Pending Cases was then correct. When he made that statement, Judge Waddick knew that other undecided cases had been submitted to him more than 90 days earlier and that his Certification was not correct.

¶ 6. Following that appearance, the Judicial Commission expressed its concern to Judge Waddick that he timely decide cases and file correct Certifications, but it took no further action against him at that time. Despite his assurances to the contrary, Judge Waddick's delay in deciding cases continued through March 31, 1998. In all, from 1991 through March 1998, Judge Waddick failed to decide at least 15 cases timely. Also, for every month from January 1991 through March 1998, he signed and filed Certifications of Status of Pending Cases falsely representing that he did not have any matter awaiting decision beyond 90 days.

¶ 7. Since April 1998, Judge Waddick has been current with his decisions, and as of the date of the parties' stipulation in this proceeding, January 19, 1999, he had no cases pending that were not decided within two weeks of submission in final form. In addition to stipulating that he is an experienced judge and is now fully and timely performing his official duties,

(4) Failure of a judge to comply with the requirements of sub. (1)(a) or sub. (2)(a) may result in one or more of the following remedial measures:

(a) Change of the judge's assignment, pursuant to SCR 70.19 (3)(a).

(b) Referral of the matter by the director of state courts to the supreme court for the initiation of contempt proceedings.

(c) Referral of the matter by the director of state courts to the judicial commission for investigation of possible misconduct.

. . .

the parties stipulated that Judge Waddick has cooperated fully with the Commission's investigation and is "deeply remorseful and ashamed of his conduct" and "promises that such conduct will never reoccur."

¶ 8. On the basis of those facts, the panel concluded that Judge Waddick wilfully violated the following rules governing judicial conduct[2] and engaged in judicial misconduct, as defined in Wis. Stat. § 757.81(4)(a).

(1) His delay in deciding cases from 1997 through March 1998 violated SCR 60.04(1)(h),[3] which requires the prompt disposition of judicial matters; for the period 1991 through 1996, that delay in deciding cases violated former SCR 60.01(4)[4] and, as the conduct was "aggravated and persistent," constituted a violation of former SCR 60.17.[5]

(2) Judge Waddick's filing of false Certifications of Status of Pending Cases for the period 1997 through

---

[2] Prior to January 1, 1997, judges were subject to the Code of Judicial Ethics, SCR ch. 60; that Code was replaced by the current Code of Judicial Conduct.

[3] SCR 60.04(1)(h) provides:

(h) A judge shall dispose of all judicial matters promptly, efficiently and fairly.

[4] Former SCR 60.01(4) provided:

(4) A judge should be prompt in the performance of his or her duties, recognizing that the time of litigants, jurors, witnesses and attorneys is of value. A judge should organize his or her court and supervise the personnel under his or her charge so that the business of the court is dispatched with promptness and convenience.

[5] Former SCR 60.17 provided:

**Rule violation.**
An aggravated or persistent failure to comply with the standards of SCR 60.01 is a rule violation.

March 1998 violated SCR 60.02 and 60.03(1),[6] which hold a judge to high standards of conduct and require a judge to observe those standards personally so that the integrity and independence of the judiciary will be preserved and to comply with the law and act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. For the period 1991 through 1996, that conduct violated former SCR 60.13.[7]

(3) Judge Waddick's lying to the Judicial Commission during his informal appearance in June 1996 violated former SCR 60.13.

¶ 9. As discipline for that judicial misconduct, the panel recommended that Judge Waddick be suspended from judicial office for 60 days. The panel adverted to this court's statements in prior cases that judicial discipline should be responsive to the gravity of the misconduct and determined by the extent the pub-

---

[6] SCR 60.02 provides:

**A judge shall uphold the integrity and independence of the judiciary.**

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining and enforcing high standards of conduct and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved. This chapter applies to every aspect of judicial behavior except purely legal decisions. Legal decisions made in the course of judicial duty on the record are subject solely to judicial review.

SCR 60.03(1) provides:

(1) A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

[7] Former SCR 60.13 provided:

**Misconduct.**

A judge shall not indulge in gross personal misconduct.

lic needs protection from unacceptable judicial behavior and the likelihood of its recurrence. The panel asserted that Judge Waddick's false statements to the Commission and his recurring false statements on his case status certifications showed significant disrespect for the essential judicial qualities of honesty and integrity and had a significant adverse impact on the public's trust and confidence in the judicial system.

¶ 10. The panel distinguished the misconduct in this case from similar misconduct in *In re Dreyfus*, 182 Wis. 2d 121, 513 N.W.2d 604 (1994). There, a circuit judge initially had reported on his case status certifications two cases that had been pending beyond the prescribed time period but prepared and submitted certifications for six months thereafter stating falsely that no matters were pending beyond that time period. The judge also made false and misleading statements to the chief judge concerning his asserted completion of the decisions in the two cases and told a Judicial Commission investigator that he had dictated the decisions in them earlier and had considered them concluded for purposes of the certifications. Those statements to the investigator were false, and approximately one week after he made them, the judge requested a meeting with the investigator and admitted to their falsity. We suspended the judge from judicial office for 15 days as discipline for that misconduct.

¶ 11. In the instant case, the panel considered Judge Waddick's conduct "markedly more serious" than that in *Dreyfus*, thereby warranting more severe discipline. It noted that for nearly his entire judicial career, Judge Waddick did not decide cases in a timely manner and that the integrity of the judicial system has been affected by his actions. In addition, unlike the

mitigating factor in *Dreyfus*, Judge Waddick never corrected the false statement he made to the Commission.

¶ 12. Thus, the panel asserted, Judge Waddick's conduct cannot be considered an isolated incident, as was the conduct in *Dreyfus;* rather, it reflects "a long-standing course of conduct that delayed justice for the litigants of Washington County and the State of Wisconsin and showed a serious disrespect for the judicial system and the 'mechanisms designed to assist' judges experiencing difficulty managing their caseloads." The mechanisms to which the panel referred are the certifications of pending case status required under SCR 70.36 and designed to alert chief judges and the director of state courts office to a need for assistance.

¶ 13. The panel's findings of fact and conclusions of law are not contested by either party, and we adopt them. We consider, then, the appropriate discipline to impose for Judge Waddick's judicial misconduct.

¶ 14. We agree with the panel's assessment of the seriousness of Judge Waddick's misconduct and the distinction it made between that misconduct and the judicial misconduct considered in *Dreyfus*. Prior to *Dreyfus*, we had occasion to consider in the context of a judicial disciplinary proceeding a circuit judge's failure to perform judicial duties promptly. *Judicial Disciplinary Proceedings Against Grady*, 118 Wis. 2d 762, 348 N.W.2d 559 (1984). We reprimanded the judge for delay in decision making that extended over a 4-year period and involved 21 cases. In addition, we reproved him for filing affidavit forms pursuant to statute knowing they misrepresented the status of his pending cases — as it "constitutes conduct prejudicial to the administration of justice and brings the judicial office into disrepute." *Id.*, 785.

¶ 15. In *Grady* we struck down a statute that required a judge's salary to be withheld for failure to decide cases within a specified time and adopted in its place a court rule requiring trial judges to report the status of cases remaining undecided beyond an established period of time. That rule's explicit purpose is to alert the administrative offices, including the director of state courts and the chief judge of the appropriate judicial administrative district, of the need for additional judicial personnel or other measures to ensure that cases be decided promptly. *Id.*, 783–84. In adopting that rule, we underscored the importance of the prompt disposition of judicial business in our courts.

¶ 16. Despite our creation of SCR 70.36 in 1984 to ensure timely case deciding in order to promote the efficient and effective operation of the court system and our reiteration in *Dreyfus* 10 years later of the importance of the prompt disposition of cases to the parties, as well as to the integrity of the judicial system on which Wisconsin citizens rely, Judge Waddick continued a lengthy pattern of not deciding cases in a timely manner throughout his judicial career, and in order to conceal his delay, he consciously evaded the very mechanism we designed and provided to assist him. Then, when his delay in deciding only one case was brought to the Judicial Commission's attention, he responded falsely to a direct question from the Commission, asserting that all of his decisions were then current and that his recently filed certifications were accurate. Relying on those false statements, the Commission dismissed allegations of misconduct with an expression of concern that Judge Waddick strive to keep his caseload current and file accurate certifications. Judge Waddick assured the Commission that he would do so, but he continued to file false certifications and persistently

delayed deciding cases for 21 more months, until the Commission commenced another investigation.

¶ 17. At the hearing before the panel, Judge Waddick detailed medical problems he had suffered since 1989, for which he took medication and for which he was hospitalized and underwent surgery in 1993. He had not, however, asserted any facts about his medical condition either in his answer to the Commission's complaint or in the stipulation of facts presented to the panel. Judge Waddick explicitly did not offer his medical condition as an excuse for his delay in deciding cases, filing false certifications, and lying to the Judicial Commission, and the panel made no mention of the medical problems in its report to this court. At oral argument in this review, Judge Waddick reiterated his medical history but made no attempt to explain or excuse his misconduct as the result of medical problems.

¶ 18. In this review, the Judicial Commission took the position that a one-year suspension from judicial office is the appropriate response to Judge Waddick's continued and protracted delay in deciding cases, filing false and misleading documents with this court, and lying to the Judicial Commission. The Commission distinguished Judge Waddick's case from *Dreyfus* in several respects. First, *Dreyfus* involved only two cases in which decisions were delayed over a one-year period; the instant case concerns fifteen cases, nine of which were delayed for over one year. Second, Judge Dreyfus, who had been on the bench for one and one-half years, filed six false certifications; Judge Waddick filed false certifications monthly over a seven-year period. Third, while both cases involved a judge who lied to the Commission, Judge Dreyfus contacted the Commission investigator one week after he had lied

and admitted to the lie; Judge Waddick never admitted his lie until he became the subject of a second Commission investigation two years later. Fourth, Judge Waddick had the benefit of the court's decision in *Dreyfus* to appreciate how seriously the court views judicial delay in deciding cases and filing false certifications.

¶ 19. On the issue of discipline, Judge Waddick argued before the panel that a "severe public reprimand" would be appropriate. He took no position in this review other than to assert that the discipline urged by the Judicial Commission is too severe. He reported that he now has reorganized his office to ensure that cases are decided timely and that accurate certifications are submitted regarding the status of pending cases. He also asserted that his suspension from judicial office would be disruptive for the citizens of the state and, in particular, of Washington county.

¶ 20. Because Judge Waddick's misconduct is substantially more serious than that for which we imposed a 15-day suspension from office in *Dreyfus*, it warrants a substantially longer suspension. We determine that the appropriate discipline to impose is a suspension from judicial office for six months. We deem that sufficient to protect the public from unacceptable judicial behavior and to ensure that it will not recur. It should also suffice to inform the judiciary and the public of the importance of the prompt disposition of cases brought to the courts for resolution, which is essential to the integrity of the judicial system on which the citizens of this state have the right to rely. In addition, in order to assist Judge Waddick in remaining current with his caseload following his return to the bench after the period of suspension, we direct the chief judge of the judicial administrative district and the Director of State Courts office to monitor Judge Waddick's

caseload and pending case status certifications for a period of one year following his return to the bench.

¶ 21. Judge Waddick has notified the court that he has retired from his judicial office, effective May 1, 2000. To the extent the suspension we impose extends beyond that date, it will continue in respect to Judge Waddick's eligibility to serve as a reserve judge.

¶ 22. We turn now to an issue that arose before the conduct panel but was not raised in this review. While it was pending before the panel, twelve letters generally supportive of Judge Waddick and critical of the Judicial Commission's position on the issue of discipline were filed in this matter. Nine of those letters came from attorneys practicing in Washington county, and three were from circuit judges. Judge Waddick asked the panel to consider the letters as evidence in mitigation of the discipline to be recommended for his misconduct, and the Judicial Commission objected on the grounds that there was no statutory authority for their submission to the panel and that, as they did not testify in the proceeding, it had no opportunity to examine the attorneys and judges in regard to their motives for writing or the accuracy of what they wrote. The panel concluded that it could consider the letters when determining the discipline to recommend to this court for Judge Waddick, and the Judicial Commission did not contest that determination in this review. Consequently, it is unnecessary that we address it.

¶ 23. Nevertheless, we take this opportunity to discuss the propriety of a judge's writing letters in support of a respondent in a disciplinary proceeding, whether a judge or an attorney. The Code of Judicial Conduct prohibits a judge from "lend[ing] the prestige of judicial office to advance the private interests of the

judge or of others. . . ." SCR 60.03(2).[8] That rule speci-

[8] SCR 60.03(2) and its Comment provide:

(2) A judge may not allow family, social, political or other relationships to influence the judge's judicial conduct or judgment. A judge may not lend the prestige of judicial office to advance the private interests of the judge or of others or convey or permit others to convey the impression that they are in a special position to influence the judge. A judge may not testify voluntarily as a character witness.

### Comment

Maintaining the prestige of judicial office is essential to a system of government in which the judiciary functions independently of the executive and legislative branches. Respect for the judicial office facilitates the orderly conduct of legitimate judicial functions. Judges should distinguish between proper and improper use of the prestige of office in all of their activities. For example, it would be improper for a judge to allude to his or her judgeship to gain a personal advantage such as deferential treatment when stopped by a police officer for a traffic offense. Similarly, judicial letterhead must not be used for conducting a judge's personal business.

A judge must avoid lending the prestige of judicial office for the advancement of the private interests of others. For example, a judge must not use the judge's judicial position to gain advantage in a civil suit involving a member of the judge's family. As to the acceptance of awards, *see* SCR 60.05(4)(e)1.

Although a judge should be sensitive to possible abuse of the prestige of office, a judge may, based on the judge's personal knowledge, serve as a reference or provide a letter of recommendation. Such a letter should not be written if the person who is the subject of the letter is or is likely to be a litigant engaged in a contested proceeding before the court. However, a judge must not initiate the communication of information to a sentencing judge or a probation or corrections officer but may provide to such persons information for the record in response to a formal request.

Judges may participate in the process of judicial selection by cooperating with appointing authorities and screening committees seeking names for consideration and by responding to official inquiries concerning a person being considered for a judgeship.

This subsection does not reach the matter of a judge's endorsement of a candidate for judicial or other nonpartisan elective office. That matter is left for consideration together with other issues

fies further: "A judge may not testify voluntarily as a character witness."

¶ 24.　Here, the judges who wrote letters in support of Judge Waddick did not testify as character witnesses at the hearing before the panel. Indeed, had they done so, the Judicial Commission likely would not have objected to the panel's consideration of their testimony, having had the opportunity to cross-examine them. Yet, the content of their letters addressed the character of Judge Waddick and, no less than their testimony would have, had the potential of lending the prestige of their judicial office in his support.

¶ 25.　Supreme Court Rule 60.03(2) does not create an absolute prohibition of a judge's serving as reference or providing letters of recommendation based on personal knowledge. The Comment to the rule cautions, however, that such letters should not be written if the person being recommended is or is likely to be a litigant engaged in a contested proceeding before the judge's court. It adds, "However, a judge must not initiate the communication of information to a sentencing judge or a probation or corrections officer but may provide to such persons information for the record in response to a formal request." Significantly, the conduct panel concluded that it could consider written

involving a judge's political and campaign activity by the committee the court will appoint to study and to make recommendations to the court.

A judge must not testify voluntarily as a character witness because to do so may lend the prestige of the judicial office in support of the party for whom the judge testifies. Moreover, when a judge testifies as a witness, a lawyer who regularly appears before the judge may be placed in the awkward position of cross-examining the judge. A judge may, however, testify when properly summoned. Except in unusual circumstances where the demands of justice require, a judge should discourage a party from requiring the judge to testify as a character witness.

material going to the character of Judge Waddick because the panel was "performing a function akin to sentencing in a criminal matter." While we do not reach the issue of whether a judge's writing of a letter speaking to the character of a respondent in a judicial or attorney disciplinary proceeding would violate SCR 60.03(2), we call the attention of the judiciary to it and express our view that the writing of such letters is, at the least, inadvisable.

¶ 26. That is not to say that a judge may not testify as a character witness in a judicial or attorney disciplinary proceeding, but as stated in the Comment to SCR 60.03(2), that testimony must not be given voluntarily. A judge may, however, testify when properly summoned, as were the judges who testified in *Judicial Disciplinary Proceedings Against Tesmer*, 219 Wis. 2d 708, 580 N.W.2d 307 (1998). Even then, the Comment exhorts judges to discourage a party from requiring the judge to testify as a character witness "except in unusual circumstances where the demands of justice require."

¶ 27. IT IS ORDERED that the Hon. Lawrence F. Waddick is suspended from the office of circuit judge for Washington county and prohibited from exercising the powers and duties of a judge for six months, commencing March 17, 2000, and that he receive no compensation for the period of suspension.