IN the MATTER OF the BAR ADMISSION OF Heather A. RIPPL:

Heather A. RIPPL, Petitioner,

v.

BOARD OF BAR EXAMINERS, Respondent.

Supreme Court

*No. 00–2706–BA. Oral argument October 3, 2001.—Decided February 22, 2002.*

2002 WI 15

(Also reported in 639 N.W.2d 553.)

521

For the petitioner there were briefs by *Michael B. Van Sicklen* and *Foley & Lardner,* Madison, and oral argument by *Michael B. Van Sicklen.*

For the respondent the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

¶ 1. PER CURIAM. This is a review, pursuant to SCR 40.08(5),[1] of the final decision of the Board of Bar Examiners (Board) declining to certify that the petitioner, Heather A. Rippl, satisfied the character and fitness requirement for admission to the Wisconsin bar set forth in SCR 40.06(1).[2] We reverse and remand the matter to the Board for further proceedings.

¶ 2. We preface our analysis by stating that we appreciate the Board's concern regarding this candidate. The Board conducts a character and fitness in-

---

[1] References to supreme court rules will be to those in effect after October 1, 2000.

SCR 40.08(5) provides that "[a] petition to the supreme court for review of an adverse determination of the board under this rule shall be filed with the clerk within 30 days of the date on which written notice thereof was mailed to the applicant."

[2] SCR 40.06(1) provides:

(1) An applicant for bar admission shall establish good moral character and fitness to practice law. The purpose of this requirement is to limit admission to those applicants found to have the qualities of character and fitness needed to assure to a reasonable degree of certainty the integrity and the competence of services performed for clients and the maintenance of high standards in the administration of justice.

quiry for every applicant who seeks admission to the State Bar of Wisconsin. *See* SCR 40.06(1). In Ms. Rippl's case, that inquiry revealed some troubling incidents in Ms. Rippl's past that raised substantial questions about her fitness to practice law. The fact that most of these incidents occurred when Ms. Rippl was younger, and before she sought and obtained psychiatric treatment, does not divest them of relevance. Our task here is to determine whether these incidents are sufficiently serious that the candidate should be permanently excluded from admission to the bar.

¶ 3. We also recognize that the Board is in a delicate position when a bar applicant's character certification presents a "close call." The duty to examine applicants' qualifications for bar admission rests with the Board. *Matter of Bar Admission of Childs,* 101 Wis. 2d 159, 303 N.W.2d 663 (1981). However, it is this court that retains supervisory authority over bar admissions. *See* SCR 30.02.[3] If the Board admits a questionable candidate, that admission effectively deprives this court of the opportunity to review the Board's decision because, obviously, a successful applicant will not seek review of the Board's decision. For that reason, we perceive the Board's unwillingness to approve the candidate in a close case such as this as a tacit recognition of this court's ultimate responsibility for regulating admission to the Wisconsin bar.

---

[3] SCR 30.02 provides: Official duties

Board members, board staff and board counsel acting in the course of their official duties under the statutes and SCR chapters 30, 31 and 40 and supreme court orders are acting on behalf of the supreme court.

¶ 4. However, while we appreciate that the Board may have felt constrained to find that Ms. Rippl's various infractions precluded certifying her character and fitness for purposes of bar admission, we are of the opinion that incidents the Board relied upon, while certainly troubling, are not of sufficient gravity to warrant a conclusion that Ms. Rippl should be forever barred from admission to the practice of law in this state.

¶ 5. In so holding we are influenced by Ms. Rippl's strong academic record, which she achieved while working several jobs and performing extensive community service. We are also influenced by Ms. Rippl's evidence of rehabilitation as reflected in the glowing testimonials provided by numerous employers for whom Ms. Rippl worked. We also note that it does not appear that Ms. Rippl willfully failed to disclose any relevant information on her bar application. *See* SCR 22.46(2).[4] Finally, we consider that the negative effect of her earlier conduct is diluted by the questionable reliability of some of the information concerning that conduct.

¶ 6. We therefore conclude that Ms. Rippl's record, while troubling in certain of its particulars, is not sufficient, when reviewed in the context of this proceeding, to warrant the conclusion that she has failed to establish the requisite character and fitness to be admitted to the practice of law in Wisconsin.

---

[4] SCR 22.46(2) provides:

(2) In the investigation, the applicant shall make a full and fair disclosure of all facts and circumstances pertaining to questions involving the applicant's character and fitness. Failure to provide information or misrepresentation in a disclosure constitutes grounds for denial of admission.

¶ 7. With that preface, we turn to the specifics of this case. Ms. Rippl had a difficult childhood. In her early teens she left home and lived in foster care homes, group homes and youth centers. She enrolled at the UW-Madison in the fall of 1989. Prior to the start of fall semester classes she withdrew from school and moved to California. She returned to school in January 1990 and resided in a campus residence hall for her freshman year. During this semester Ms. Rippl's college roommates accused her of stealing personal items from them. Ms. Rippl denied the charges but was convicted, following a jury trial, of misdemeanor theft.[5] That fall a neighbor for whom she babysat also accused Ms. Rippl of taking property from her. She was not formally charged in connection with the matter although she later admitted she "had the items."

¶ 8. In 1994 Ms. Rippl received her undergraduate degree in Psychology from the UW-Madison, graduating in five years, with honors. She supported herself through college by working several jobs and performed extensive community service.

¶ 9. In 1995 Ms. Rippl enrolled in law school at the UW-Madison. She maintained a good grade point average, earned a Law Merit Scholarship and was selected as a managing editor of the Wisconsin Law Review. She worked multiple jobs and performed extensive community service. Her employers uniformly spoke highly of her work ethic and character. During law school she also sought psychiatric counseling from Dr. Julie Nielsen, a Board certified psychiatrist with the University of Wisconsin Student Health Service.

---

[5] Ms. Rippl was convicted of taking a silver bracelet valued at approximately $7 from her college roommate. The conviction was formally expunged from Ms. Rippl's record upon her satisfactory completion of her two-year probationary sentence.

¶ 10. In November 1997, during her last year of law school, Ms. Rippl sought admission to the bar pursuant to SCR 40.03 (the "diploma privilege"). In connection with her application, Ms. Rippl disclosed that she had received treatment for mild depression while in law school and that she had been prescribed Prozac. She also disclosed the misdemeanor theft conviction from her freshman year in college. In June 1998 she voluntarily supplemented her bar application, disclosing a municipal ordinance citation for disorderly conduct that occurred during her third year of law school. The citation stemmed from an argument with a police officer outside her residence when Ms. Rippl "lost her temper" because the officer declined to move his unmarked vehicle, which was blocking her own car.

¶ 11. Ms. Rippl graduated from the University of Wisconsin Law School in 1998. However, the disclosures in her bar application prompted the Board to require that Ms. Rippl submit to an independent psychological evaluation by a Board approved psychologist. Dr. Michael Speirer, a forensic psychologist, conducted the evaluation and issued his initial report in February 1999. At the Board's request he submitted a supplemental report dated May 12, 1999.

¶ 12. On July 15, 1999, the Board issued an initial ruling denying Ms. Rippl's application on the grounds that she had failed to demonstrate that she satisfied the character and fitness requirement for bar admission set forth in SCR 40.06(1). Ms. Rippl timely objected to the Board's initial ruling and requested and received a hearing. At the hearing on March 21, 2000, Ms. Rippl submitted numerous affidavits in support of her application from several former and current employers,

including two circuit court judges.[6] She submitted her own affidavit addressing the incidents that formed the factual basis for the Board's initial adverse decision. She offered testimony from several witnesses including several previous and current employers. She responded to questions from the Board and provided the sworn medical opinion of her own psychiatrist.

¶ 13. On September 6, 2000, the Board issued its final decision declining to certify that Ms. Rippl had satisfied the requirements for admission to practice. The final decision was the same, in all material respects, as the initial decision. Ms. Rippl sought review of the Board's final decision in this court pursuant to SCR 40.08(5).

¶ 14. Ms. Rippl contends that the Board's decision reflects an erroneous exercise of discretion because the Board's findings do not reflect consideration of any of the evidence she submitted at the evidentiary hearing. She contends further that the record evidence does not support several of the Board's factual findings and maintains that she did satisfy the criteria for admission to the bar set forth in SCR 40.06(1).

¶ 15. We first address the relevant legal standards and applicable standard of review. A candidate for admission to the bar bears the burden of proof to establish the qualifications for bar admission set forth

[6] We take this opportunity to remind the judiciary to review SCR 60.03(2). *See also Judicial Disciplinary Proceedings Against Waddick,* 2000 WI 11, 232 Wis. 2d 733, 605 N.W.2d 861.

in SCR 40.02[7] including the character and fitness requirement set forth in SCR 40.06. *See* SCR 40.07.[8] Pursuant to SCR 40.06(3),[9] the applicant must estab-

---

[7] SCR 40.02 provides: Qualifications generally

A person who meets all of the following qualifications shall be admitted to practice law in this state by order of the supreme court:

(1) Has attained the age of majority under the law of this state.

(2) Satisfies the legal competence requirements by diploma privilege (SCR 40.03), bar examination (SCR 40.04) or proof of practice elsewhere (SCR 40.05).

(3) Satisfies the character and fitness requirements set forth in SCR 40.06.

(4) Takes the oath or affirmation prescribed in SCR 40.15 in open court before the supreme court or a justice thereof or before a member of the highest court of another jurisdiction or a person authorized by that jurisdiction to administer the attorney's oath for bar admission there or before a judge of the U.S. District Court or Court of Appeals or a justice of the U.S. Supreme Court.

(5) Subscribes the roll of attorneys maintained by the clerk of the supreme court or has his or her name entered thereon by the clerk.

[8] SCR 40.07 provides that "[t]he burden of proof shall be on the applicant to establish qualifications under SCR 40.02. Refusal of an applicant to furnish available information or to answer questions relating to the applicant's qualifications shall be deemed a sufficient basis for denial of the certification for admission."

[9] SCR 40.06(3) provides:

An applicant shall establish to the satisfaction of the board that the applicant satisfies the requirement set forth in sub. (1). The board shall certify to the supreme court the character and fitness of qualifying applicants. The board shall decline to

lish character and fitness to the satisfaction of the Board, whose duty it is to certify to this court the character and fitness of qualifying applicants. *Matter of Bar Admission of Martin,* 181 Wis. 2d 27, 29, 510 N.W.2d 687 (1994).

¶ 16. In a review pursuant to SCR 40.08(5) of an adverse determination of the Board, the court adopts the Board's findings of fact if they are not clearly erroneous. *Matter of Bar Admission of Crowe,* 141 Wis. 2d 230, 232, 414 N.W.2d 41 (1987). The court then determines whether the Board's conclusions of law based on those facts are proper. In making that determination, the court is appreciative of the Board's experience in administering the court's bar admission rules, but the court is obligated to make its legal determinations de novo. *Matter of Bar Admission of Rusch,* 171 Wis. 2d 523, 492 N.W.2d 153 (1992). Like the Board, we consider whether the applicant possesses the character and fitness to practice law using the guidelines established in BA 6.02[10]

certify the character and fitness of an applicant who knowingly makes a materially false statement of material fact or who fails to disclose a fact necessary to correct a misapprehension known by the applicant to have arisen in connection with his or her application.

[10] BA 6.02 provides: Relevant conduct

The revelation or discovery of any of the following should be treated as cause for further inquiry before the Board decides whether the applicant possesses the character and fitness to practice law:

(a) unlawful conduct

(b) academic misconduct

(c) false statements by the applicant, including concealment or nondisclosure

and BA 6.03.[11]

¶ 17. We now turn to the Board's factual findings as set forth in its final decision, which are as follows:

A. The applicant was discharged from employment in 1988 [while a high school car hop at A & W] for a cash drawer discrepancy, which she blamed on her probation officer;

B. the applicant was arrested in 1990, and later tried and convicted for theft from her college roommate, denied and continues to deny the truth of the facts, blaming her roommate;

(d) acts involving dishonestly or misrepresentation

(e) abuse of legal process

(f) neglect of financial responsibilities

(g) neglect of professional obligations

(h) violation of an order of a court

(i) evidence of mental or emotional impairments

(j) evidence of drug or alcohol dependency

(k) denial of admission to the bar in another jurisdiction on character and fitness grounds

(l) disciplinary action by a lawyer disciplinary agency or other professional disciplinary agency of any jurisdiction

[11] BA 6.03 provides that the Board shall consider:

(a) the applicant's age at the time of the conduct

(b) the recency of the conduct

(c) the reliability of the information concerning the conduct

(d) the seriousness of the conduct

(e) the mitigating or aggravating circumstances

(f) the evidence of rehabilitation

(g) the applicant's candor in the admissions process

(h) the materiality of any omissions or misrepresentations

(i) the number of incidents revealing deficiencies

530

C. the applicant was accused of theft in 1991, while on probation for the above-described conviction, by a neighbor whose children she was hired to care for, giving a false name to the police at the time, later denying she did so;

D. the applicant was dropped from the Deferred Prosecution Program while on probation for the conviction described in (A) above for the reason that she did not cooperate, though the applicant blamed being so dropped on her financial status;

E. the applicant left her first law school without paying tuition, subsequently agreed to pay it, but failed to do so pursuant to that agreement;

F. the applicant acquired—and paid—enough parking tickets to, in her words, "wallpaper a room" evincing a continuing disregard for the law;

G. the applicant was involved in an altercation with a police officer in 1998 while in law school, blamed her car for causing the problem for which she was ultimately cited, received—and paid—a citation for disorderly conduct;

H. the applicant admitted the excessive use of alcohol while in college, but refused to discuss her use of other drugs with the evaluator . . . thereby concealing and not disclosing relevant facts;

I. on several instances, sufficient to suggest a pattern, the applicant took action to avoid stress, including dropping out of undergraduate school in her freshman year, dropping out of law school in her first year, flying to Rome then flying to Amsterdam on short notice because of a

531

"sense of increasing stress at work" (returning on the eve of a scheduled evaluation appointment), both in 1998 while her application for admission to the practice of law was pending and while active inquiries to her remained open.

J. The applicant stated that her medication makes her "not suicidal for the most part."

Additional factual findings regarding Ms. Rippl's personality profile were derived from the psychological reports submitted by Dr. Speirer.

¶ 18. Record evidence supports many of the Board's factual findings. We have already noted that Ms. Rippl was convicted of misdemeanor theft for taking a bracelet from her roommate during her freshman year in college. Ms. Rippl also admits that the same year she also took items from a neighbor whose children she was hired to care for and that she initially refused to cooperate with the investigating police officer, although she was not formally charged in connection with the incident. It is also undisputed that in 1998 Ms. Rippl was cited for disorderly conduct stemming from the aforementioned altercation with a police officer. And, Ms. Rippl admits to having received numerous parking tickets while in law school.

¶ 19. These factual findings depict a candidate who certainly merits the Board's concern. And, like the Board, we find the degree of prevarication that accompanies Ms. Rippl's explanations for various incidents a point of concern. However, we are compelled to conclude that the record does not support a number of the Board's factual findings or the adverse inferences drawn from them. Our own review of the record also suggests that there is more to Ms. Rippl than the Board's factual findings, taken alone, would suggest.

¶ 20. For example, the Board found that when Ms. Rippl was still in high school, in 1988, she was "discharged" from her employment as an A & W "carhop" "for a cash drawer discrepancy, which she blamed on her probation officer." However, the record does not support the finding that Ms. Rippl was under the supervision of a probation officer at that time or that she was discharged in connection with that incident or, indeed, that the "cash drawer discrepancy" was anything more than an accident. In her sworn affidavit, Ms. Rippl explains that on one occasion she apparently lost a $50 bill during a shift. She says that she told her manager of the cash shortfall and that they jointly concluded that the bill may have blown away or otherwise been lost. She acknowledges that she was "scolded for being sloppy and inattentive" but denies that she was discharged or otherwise charged in connection with this incident and there is no record evidence to the contrary.

¶ 21. The Board also found that Ms. Rippl was dropped from the deferred prosecution program for "failure to cooperate." Ms. Rippl acknowledges that she failed to complete the program. However, she avers that it was because she was unable to comply with the financial requirements associated with participation in the program and notes that her failure to complete the program did not affect her successful completion of probation. The record evidence before this court simply does not support the finding that willful lack of cooperation was the reason for Ms. Rippl's failure to complete the program.

¶ 22. In a similar vein, the Board initially found that Ms. Rippl left her first law school without paying $525.83 owed for tuition and "subsequently failed to follow through on an agreement to pay the tuition."

But, by the time of the evidentiary hearing, it is undisputed that Ms. Rippl had paid the outstanding tuition bill in full. However, the Board's final decision makes the same factual finding regarding the unpaid tuition and does not reflect that the tuition bill was paid.

¶ 23. We also conclude that the fact that Ms. Rippl admitted that she received enough parking tickets in her words, to "wallpaper a room" does not support the Board's inference that Ms. Rippl thus evinces a "continuing disregard for the law." In her sworn affidavit, Ms. Rippl explains that she intended that comment as a "sarcastic, off-the-cuff remark . . . meant for comic effect." It is also undisputed that she promptly paid each of the tickets. Her comment may have been ill advised in the context of this proceeding, but we cannot agree that numerous paid parking tickets, without more, necessarily evince a "continuing disregard for the law."

¶ 24. The Board made the further finding that Ms. Rippl had admitted the excessive use of alcohol while in college and that she refused to discuss her use of illegal drugs with Dr. Speirer. In her sworn affidavit, Ms. Rippl admits that she occasionally drank to excess when she was a college student at the University of Wisconsin–Madison. She emphatically denies any use of illegal drugs. She maintains that she does not have a drinking problem and that no one has ever suggested that she has a problem with alcohol.

¶ 25. The record supports her assertion. Dr. Speirer's report explicitly notes that "adult drinking has never been a problem . . . and no one has identified it as a problem." Therefore, while the Board's factual finding may have some support in the record, there appears to be no record evidence to support the Board's apparent

inference that Ms. Rippl currently suffers from chemical dependency issues that might affect her ability to practice law.

¶ 26. Similarly, the Board found Ms. Rippl's medication makes her "not suicidal for the most part." Ms. Rippl admits to occasional suicidal tendencies prior to November 1996 and that, prior to December 1997, Prozac was prescribed for her depression. She maintains that she has now been "free of any symptom of depression for over a year and a half." She avers further that she "is not suicidal." Therefore, the significance of the Board's finding is unclear, particularly in light of Dr. Nielsen's sworn statement opining that Ms. Rippl's psychological condition "warrants pharmacological treatment ONLY if it recurs" and that it "will NOT impair her ability to practice law independently and unsupervised." (Emphasis in original).

¶ 27. We briefly address the Board's findings regarding Ms. Rippl's personality profile. In each of its initial and final decisions the Board relies heavily on the two psychological reports submitted by Dr. Speirer. Ms. Rippl does not challenge Dr. Speirer's conclusions. Rather, Ms. Rippl argues that the Board's findings with respect to her psychological profile take the negative aspects of Dr. Speirer's reports out of context.[12]

---

[12] One troubling procedural irregularity in this case involves the fact that Ms. Rippl was told she would be entitled to a copy of Dr. Speirer's report, for which she paid. Ms. Rippl did receive a copy of the initial report. However, the Board requested that Dr. Speirer prepare a supplemental report. Neither Ms. Rippl nor her counsel learned of or received a copy of the supplemental report until the very end of the evidentiary hearing the following year. As we have previously cautioned the Board in a case involving a similar evidentiary issue, it would have been the "better practice" for the Board to have notified

¶ 28. Dr. Speirer stated that Ms. Rippl's background and behavior raised concerns about her honesty, trustworthiness, and integrity. However, he acknowledged positive character traits as well, stating that "[Ms. Rippl] is capable of working independently and is likely to function and be seen as a reliable employee."

¶ 29. We decline to conclude that the Board's factual findings regarding Ms. Rippl's psychological profile are clearly erroneous. However, we note that in making its findings of fact, the Board appears to have completely discounted the sworn opinion of Ms. Rippl's treating psychiatrist during law school, Dr. Julie Nielsen, a Board certified psychiatrist.

¶ 30. The Board contends that it is entitled to "choose the more negative evaluation of Dr. Speirer" over the conclusions of Dr. Nielsen, who opined that Ms. Rippl is psychologically fit to practice law. The Board explains further that "[e]vidence showing that Rippl did well in law school, works hard, is self-reliant and performed community service does not answer the Board's concerns."[13] The Board thus discounted the professional recommendations Ms. Rippl produced, asserting that these lawyers and judges:

---

Ms. Rippl of the supplemental report and of the Board's intent to rely on that report in reaching a determination on the question of her character and fitness for bar admission. *See Matter of Bar Admission of Radtke,* 230 Wis. 2d 254, 267, 601 N.W.2d 642 (1999).

[13] Specifically, the Board explains that it was concerned about Ms. Rippl's "history of theft and other financial difficulties." In the Board's judgment, Ms. Rippl's "passive aggressive personality . . . raises questions about her ability to maintain appropriate professional behavior in her relationships with judges, opposing attorneys, and others involved in the stressful environment of adversarial litigation."

. . . were not in a good position to address these questions either. They observed her working under close supervision as a law clerk or its equivalent where she neither personally handled other people's property nor got individually involved in the heat of legal advocacy and where she was likely to be on her best behavior in any event.

¶ 31. Thus, the Board explains that it did not ignore the evidence introduced at the hearing; rather, it deemed that evidence "essentially irrelevant" to the question whether Ms. Rippl has the necessary character and fitness to practice law. The Board maintains that, in any event, it is not required to specify the evidence it declined to rely on.

██

¶ 32. We agree that it is enough if the findings of fact and conclusions of law are sufficiently specific to indicate that the Board undertook a reasonable examination of the facts and the law. *See, e.g., State v. Jeske,* 197 Wis. 2d 905, 912, 541 N.W.2d 225 (Ct. App. 1995). Unfortunately, in this case, the Board's final decision is virtually identical to its initial decision. As such, the final decision does not reflect the Board's consideration of the extensive documentary and testimonial evidence offered at the hearing, thereby hindering our review.

¶ 33. However, we need not review or adopt every finding of fact of the Board. We are of the opinion that the incidents the Board relied upon, while troubling, are not of sufficient gravity to warrant a conclusion that Ms. Rippl failed to meet her burden to establish character and fitness to practice law.

¶ 34. As we noted previously, in reaching this conclusion we are influenced by evidence of Ms. Rippl's rehabilitation, as demonstrated by the positive testimonials provided by numerous employers for whom Ms.

Rippl worked, describing Ms. Rippl as "diligent, trust-worthy and hardworking" and who aver she "demon-strated honesty and integrity, and at all times acted in an ethical and responsible manner". We find these recommendations highly relevant to the question of whether Ms. Rippl can maintain appropriate profes-sional behavior and demeanor. We also note that both Dr. Nielsen and Dr. Speirer agreed that:

> Heather Rippl is a bright and capable individual with a well-developed intellect. She is an analytical thinker, can reason well and manifests strong determination and zeal. She has the ability to pursue both personal and intellectual interests that reflect a high level of tenacity.

¶ 35. In addition, Dr. Nielsen offered the follow-ing sworn opinion of Ms. Rippl's disturbing behavior in college:

> The behaviors by Heather . . . are not extraordinar-ily unusual nor indications of a character pathology for a young adult like Heather coping with uncertain and challenging personal relationships while trying to do well in a rigorous academic program. In Heather's case it is important to note that she affirmatively and voluntarily sought out appropriate assistance when she felt she needed it. She did so while holding down part-time jobs concomitant to performing at a very high level at both undergraduate and law school levels. Heather was not forced to see me or to request medi-cation; rather, she proceeded in a very mature fashion to seek assistance when and as she needed it.

¶ 36. We also considered Ms. Rippl's strong aca-demic record, particularly in light of the fact that she achieved this academic record while working several jobs and performing extensive community service.

¶ 37. The court takes seriously its responsibility for matters of bar admission and we do not make this decision lightly. We contemplated admitting this candidate subject to some sort of monitoring requirements as we have done in disciplinary cases involving attorneys with a history of chemical dependency. *See, e.g., Reinstatement of License of Burke,* 211 Wis. 2d 166, 564 N.W.2d 340 (1997). Ultimately, we deemed such an option impractical here. We also considered upholding the Board's refusal to certify the applicant's character but indicating that she could reapply for admission to the bar after some period of time, as we have done in other cases. *See, e.g., Matter of Bar Admission of Radtke,* 230 Wis. 2d 254, 601 N.W.2d 642 (1999). However, more than four years have passed since Ms. Rippl first sought admission to the bar in November 1997. We conclude that no purpose would be served by requiring additional delay.

¶ 38. Ultimately, we are of the opinion that the incidents from Ms. Rippl's past, while certainly troubling, are not of sufficient gravity for us to conclude that Ms. Rippl should be forever barred from admission to the practice of law in this state. Indeed, we hold that the record evidence, taken as a whole, does not support the conclusion that she has failed to establish the requisite character and fitness to be admitted to the practice of law in Wisconsin.

¶ 39. Because we reverse the decision of the Board declining to certify Ms. Rippl's character and fitness for bar admission for the reasons stated, it is unnecessary to address the constitutional arguments set out in her brief.

¶ 40. IT IS ORDERED that the decision of the Board of Bar Examiners' declining to certify that

Heather A. Rippl has satisfied the requirements for admission to the practice of law in Wisconsin is reversed and the matter is remanded to the Board for further action consistent with this opinion.