# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012XX605-BA |
| COMPLETE TITLE: | In the matter of the conditional admission of B. R. C.<br><br>Board of Bar Examiners,<br>       Complainant-Respondent-Appellant,<br>   v.<br>B. R. C.,<br>       Respondent-Petitioner-Respondent. |

BAR ADMISSION OF B.R.C.

| | |
|---|---|
| OPINION FILED: | May 9, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |
|   NOT PARTICIPATING: | ABRAHAMSON, C.J., did not participate. |

| | |
|---|---|
| ATTORNEYS: | |

**2014 WI 23**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2012XX605-BA


STATE OF WISCONSIN                    :          IN SUPREME COURT


**In the matter of the conditional admission of B.R.C.**

**Board of Bar Examiners,**

             **Complainant-Respondent-Appellant,**

    **v.**

**B.R.C.,**

             **Respondent-Petitioner-Respondent.**

**FILED**

**MAY 9, 2014**

Diane M. Fremgen
Clerk of Supreme Court

---

ATTORNEY reinstatement proceeding. *Attorney's conditional license reinstated.*


¶1   PER CURIAM.   The Board of Bar Examiners (BBE) appeals a referee's report recommending the court reinstate B.R.C.'s license to practice law subject to continued monitoring as required by the terms of his conditional admission.  B.R.C. is currently suspended for failure to comply with certain terms of his conditional admission.  We accept the referee's findings and conclusion that B.R.C. has satisfied character and fitness requirements for purposes of bar admission in this state and we

reinstate B.R.C.'s license to practice law conditioned upon his continued monitoring by the Wisconsin Lawyers Assistance Program (WisLAP) until July 2, 2014.

¶2   This is the first time we have considered a petition for reinstatement filed by a lawyer who was suspended for failure to comply with terms of the lawyer's conditional admission.  In 2011, the court, at the behest of the BBE, adopted SCR 40.075, authorizing conditional admission.  See S. Ct. Order 08-13, 2011 WI 40 (issued June 8, 2011, eff. June 8, 2011).  This rule affords certain bar applicants who might otherwise have been denied admission to the bar because of character and fitness concerns the opportunity to practice law subject to various oversight mechanisms designed to protect the public.  B.R.C. was one of the early beneficiaries of this new rule.

¶3   B.R.C. graduated from a Wisconsin law school in the spring of 2011, and sought bar admission.  Aspects of his bar application, including a 2009 conviction for operating a motor vehicle while intoxicated, raised character and fitness concerns pertaining to his alcohol use.  Following an evaluation, the BBE offered B.R.C. conditional admission.  The terms of his conditional admission were set forth in a Consent Agreement For Conditional Admission (Consent Agreement).  The Consent Agreement provided in relevant part that B.R.C. would be conditionally admitted for a period of two years during which he was required to abstain from alcohol use and to submit to monitoring by WisLAP to ensure his compliance with the

conditions on his law practice. Pursuant to the Consent Agreement, B.R.C. agreed, among other things, "[t]o submit to random urinalysis testing for alcohol or other drugs as determined appropriate by the Coordinator."

¶4   On December 27, 2011, B.R.C. accepted the offer of conditional admission and signed the Consent Agreement. He was sworn in on January 18, 2012, and began practicing law.

¶5   On March 1, 2012, B.R.C. met with WisLAP manager Linda Albert who informed him that he also needed to execute a separate "monitoring contract" with WisLAP. The WisLAP Monitoring Contract contained some terms not mentioned in the Consent Agreement.[1]  B.R.C. also learned that he could be required to submit to hair follicle testing, fingernail testing, and blood testing, which are more expensive than the urine testing he had known would be required. B.R.C. refused to sign the monitoring contract asserting that he should have been made aware of the WisLAP requirements before he executed the Consent Agreement. The BBE was advised of B.R.C.'s refusal to sign the monitoring contract on March 12, 2012.

¶6   On May 11, 2012, the BBE voted to rescind B.R.C.'s conditional admission for his continued refusal to sign a monitoring contract and concomitant failure to submit to monitoring. The BBE requested this court issue an order to show

[1] For example, the monitoring contract contains the requirement that "[i]f leaving the area where he/she lives or practices (e.g. vacation, etc.) interferes with the terms of the Monitoring Contract, the Participant will obtain consent from the Monitor and/or WisLAP staff before leaving."

cause as to why B.R.C.'s license should not be suspended. The order issued and, on June 27, 2012, B.R.C. filed a response explaining his reasons for declining to sign the WisLAP Monitoring Contract and asking the court to reconsider its order to show cause.

¶7 By order dated July 2, 2012, this court informed B.R.C. that his license would be suspended if he did not sign the WisLAP Monitoring Contract within 14 days. The order directed the BBE to reinstate B.R.C.'s conditional admission if he signed the monitoring contract. We directed the BBE to ensure that applicants offered conditional admission receive a copy of the WisLAP Monitoring Contract before accepting conditional admission. The BBE has since revised its procedures accordingly.

¶8 In July 2012, some six months after commencing the practice of law, B.R.C. signed a monitoring contract. On the same day he signed the monitoring contract, B.R.C. received an e-mail from WisLAP advising him that it had changed its third-party administrator, requiring a new contract be executed, which was provided. The two monitoring contracts were identical except for the name of the administrator and the initiation date and completion date. The dates on the first contract were from January 18, 2012 through January 18, 2014. The dates of the

replacement contract were from July 2, 2012 to July 2, 2014. B.R.C. signed the second contract. Monitoring commenced.[2]

¶9 Shortly after signing the contract B.R.C. noted and challenged the revised completion date. On July 20, 2012, the BBE director sent a letter to B.R.C. stating:

> It is my understanding that you executed a monitoring contract with WisLAP on July 16, 2012. The initiation date of the monitoring contract is July 2, 2012. Accordingly, you will be monitored for two years, from July 2, 2012, to July 2, 2014, which is the Board's intent. Subject to that understanding, I will advise the court that you are compliant and I will seek to withdraw the request for your suspension. However, if you are seeking to "post date" your monitoring agreement to January 18, 2012, I will ask the court to impose the suspension on your license.

¶10 B.R.C. timely replied to the BBE, arguing that he read the court's order to impose the original terms such that monitoring would end in January 2014, not July 2014. B.R.C. did not address the fact that he had been practicing law for nearly six months without submitting to the WisLAP monitoring expressly required by his conditional admission. The BBE sought

---

[2] B.R.C. moved to strike from page one of the BBE's reply brief the words "B.R.C. chose not to sign the agreement," arguing that B.R.C. had in fact signed both a monitoring agreement and a revised monitoring agreement. We held the motion in abeyance pending our review of the record. We dismiss the motion. The abbreviated chronological summary in the BBE's reply brief did not adversely affect our consideration of B.R.C.'s case. The court was aware, prior to B.R.C.'s suspension, that B.R.C. had signed two versions of the monitoring agreement in the wake of the court's July 2012 order and that B.R.C. later argued he was entitled to an earlier termination date.

suspension. B.R.C. objected to the suspension request, reiterating his interpretation of the court's order.

¶11 By order dated August 14, 2012, this court suspended B.R.C.'s license to practice law in Wisconsin for his continued refusal to abide by the terms of his conditional admission.[3]

¶12 On October 12, 2012, B.R.C. filed a petition seeking reinstatement. The BBE was directed to respond. Additional filings ensued. The BBE recommended B.R.C.'s suspension continue for one year, following which it would consider a reinstatement petition and evaluate his eligibility for conditional admission, but only if he underwent a comprehensive psychological evaluation including personality testing.

¶13 B.R.C. opposed the request for a psychological evaluation and requested a hearing. We appointed Referee John Nicholas Schweitzer to consider this novel reinstatement petition. Referee Schweitzer conducted proceedings culminating in an evidentiary hearing on September 16, 2013. He filed a report on October 16, 2013, recommending reinstatement subject to B.R.C.'s continued monitoring by WisLAP until July 2, 2014, and recommending B.R.C. bear the costs of this proceeding consistent with SCR 40.075(5).

¶14 The BBE appeals. The BBE asks this court to require a comprehensive psychological evaluation in order to ascertain

---

[3] Nearly one year later, on August 6, 2013, B.R.C. objected to the manner in which his license suspension was identified on the State Bar of Wisconsin web site. We held the objection in abeyance and now dismiss it as moot in view of our decision in this matter.

6

whether other conditions may be warranted prior to reinstatement. If the court deems reinstatement appropriate now, the BBE asks the court to require monitoring for two years following reinstatement. B.R.C. asks the court to reinstate his law license without any conditions.

¶15 We must determine whether B.R.C. has met his burden of demonstrating he has the requisite character and fitness to warrant reinstatement of his conditional license to practice law in Wisconsin. The referee considered B.R.C.'s petition for reinstatement under SCR 40.06[4] and the guidelines established in BA 6.02,[5] BA 6.03,[6] and SCR 22.29.[7]

---

[4] SCR 40.06 provides, inter alia, that:

(1) An applicant for bar admission shall establish good moral character and fitness to practice law. The purpose of this requirement is to limit admission to those applicants found to have the qualities of character and fitness needed to assure to a reasonable degree of certainty the integrity and the competence of services performed for clients and the maintenance of high standards in the administration of justice.

. . . .

(3) An applicant shall establish to the satisfaction of the board that the applicant satisfies the requirement set forth in sub. (1). The board shall certify to the supreme court the character and fitness of qualifying applicants. The board shall decline to certify the character and fitness of an applicant who knowingly makes a materially false statement of material fact or who fails to disclose a fact necessary to correct a misapprehension known by the applicant to have arisen in connection with his or her application.

[5] BA 6.02 provides:

Relevant Conduct or Condition. The revelation of discovery or any of the following should be treated as cause for further inquiry before the Board decides whether the applicant possesses the character and fitness to practice law:

(a) unlawful conduct

(b) academic misconduct

(c) false statements by the applicant, including concealment or nondisclosure

(d) acts involving dishonesty or misrepresentation

(e) abuse of legal process

(f) neglect of financial responsibilities

(g) neglect of professional obligations

(h) violation of an order of a court

(i) evidence of mental or emotional impairments substantial enough to affect the applicant's ability to practice law

(j) evidence of drug or alcohol dependency

(k) denial of admission to the bar in another jurisdiction on character and fitness grounds

(l) disciplinary action by a lawyer disciplinary agency or other professional disciplinary agency of any jurisdiction

[6] BA 6.03 provides:

Use of Information. The Board will determine whether the present character and fitness of an applicant qualifies the applicant for admission. In making this determination . . . the following factors should be considered in assigning weight and significance to prior conduct:

(a) the applicant's age at the time of the conduct

¶16 We affirm a referee's findings of fact unless they are found to be clearly erroneous. See In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125; see also In re Bar Admission of Rusch, 171 Wis. 2d 523, 528-29, 492 N.W.2d 153 (1992). We review legal conclusions de novo. Id. This court retains the ultimate authority to determine who should be admitted to the bar of this state. In re Bar Admission of Rippl, 2002 WI 15, ¶¶3, 16, 250 Wis. 2d 519, 639 N.W.2d 553.

¶17 Initially, the significant issue regarding B.R.C.'s character and fitness to practice law in Wisconsin was his alcohol use. See BA 6.02 (j). The referee noted that B.R.C.

---

(b) the recency of the conduct

(c) the reliability of the information concerning the conduct

(d) the seriousness of the conduct

(e) the mitigating or aggravating circumstances

(f) the evidence of rehabilitation

(g) the applicant's candor in the admissions process

(h) the materiality of any omissions or misrepresentations

(i) the number of incidents revealing deficiencies

[7] Although the referee also considered the criteria set forth in SCR 22.29, he determined that rule offered limited guidance because it applies strictly to reinstatement following a disciplinary revocation or suspension, which is always for a specific period of time.

has participated in the WisLAP monitoring program, first under a monitoring contract and later voluntarily, such that he has been monitored since July 2012.   The referee found that by all indications, B.R.C. has not used alcohol since entering the monitoring contract.[8]   The record supports these findings and we accept them.

¶18  B.R.C.'s conduct during these proceedings led the BBE to request a psychological evaluation, inclusive of personality testing, the results of which would be utilized to determine what, if any, additional conditions should be imposed on him. The referee acknowledged that the BBE's concerns over B.R.C.'s personality and psychological health are understandable but ultimately concluded they are not "sufficiently well founded to require him to submit to psychological testing."

¶19 On appeal, the BBE asks the court to require a psychological evaluation.   The BBE explains that it made this request based on "a long series of events that have occurred with B.R.C. over the course of the last two years" including his:

> [R]efusal to sign the monitoring contract, his persistent belief and attempts at trying to negotiate the terms of his monitoring contract and its timeline, his lack of understanding and insight as to why the Court suspended him, his contrition towards his monitor, but the opposite behavior towards the manager

---

[8] The parties have characterized B.R.C. as a "voluntary participant" in the WisLAP monitoring program.   He has checked in more or less regularly and, as of the date of the hearing, had been tested for alcohol in his system 26 times, with no adverse result.

of WisLAP, Ms. Albert, as well as his insistence that the Court and the BBE were persisting in violating his rights.

¶20  First, as the referee observed, this case is not about whether the BBE's decision to offer B.R.C. conditional admission was appropriate.  Supreme Court Rule 40.075 provides a procedural mechanism for an attorney who wishes to challenge the BBE's decision to offer conditional admission.  B.R.C. did not invoke that procedure.  Instead, he accepted conditional admission and became subject to the terms of the Consent Agreement which required monitoring by WisLAP.  Because he did not abide by those terms, the court ultimately suspended his conditional license to practice law.  All arguments pertaining to whether the BBE erred in offering conditional admission are superfluous; we will not address them.

¶21  The referee considered both the initial dispute over signing the WisLAP Monitoring Contract and the ensuing dispute over the end date for that contract.  The referee noted that WisLAP and the BBE found that B.R.C.'s repeated objections were at least in part self-serving.  We agree.  While he was disputing the terms of his monitoring, B.R.C. kept practicing law for some six months with no monitoring or oversight in direct contravention of the essential terms of his conditional admission.  With respect to the end date of his monitoring, it begs credulity to think the court would simply excuse six months of noncompliance with oversight the BBE had deemed necessary to ensure he could be safely recommended to the public.

¶22 On balance, however, the referee concluded that B.R.C.'s questions, conduct, and interpretation of this court's July 2, 2012 order were not entirely unreasonable, finding that there was "an element of principle" in his objections and noting that the BBE was directed to revise certain parts of its procedures as a result of this proceeding. We accept and affirm the referee's findings and conclusions, including his determination that the BBE's concerns are not sufficiently well founded to demonstrate a need for a psychological evaluation. We therefore decline to require B.R.C. to undergo a psychological evaluation as a condition or prerequisite of his reinstatement.

¶23 The referee opined that completion of the two-year monitoring contract scheduled to end July 2, 2014, was a sufficient condition to impose on B.R.C.'s reinstatement. On appeal, the BBE asks the court to require monitoring for two years from the date of reinstatement. The BBE expresses a legitimate concern that B.R.C.'s voluntary compliance with monitoring while suspended is not an accurate proxy for whether he can manage alcohol together with the stress of legal practice.

¶24 We agree that B.R.C. must complete the full two years of monitoring as his conditional admission originally required, with a monitor located in the Milwaukee area, if possible. At this time, there is insufficient cause to warrant extending the conditions imposed on B.R.C. past July 2, 2014. See SCR 40.075(6). If B.R.C. fails to comply with the terms of his

monitoring contract before it terminates, the parties shall immediately advise the court and we reserve the right to reconsider this decision.  However, we accept the referee's conclusion that B.R.C. has demonstrated character and fitness sufficient to warrant his admission to the bar subject to successful completion of the monitoring contract.  Upon completion of the monitoring contract he will be deemed admitted, without conditions.

¶25 We caution B.R.C. that before he may practice law in Wisconsin again he must ensure he has satisfied the requirements applicable to all attorneys relating to continuing legal education (CLE), bar dues, assessments and fees.[9]  If B.R.C. cannot pay the full costs of this reinstatement proceeding immediately, an agreement may be reached with the BBE to enable him to pay the costs over time.[10]

¶26  IT IS ORDERED that the conditional admission of B.R.C. to practice law in Wisconsin is reinstated subject to the

---

[9] In its reply brief, the BBE advises the court that if B.R.C. is readmitted in 2014, he will be required to comply with the 2013-2014 CLE requirements by reporting 30 approved hours, including three hours of ethics and professional responsibility; or, if applicable, by electing the exemption available under SCR 31.04 (2) for that reporting period.  These are the standard reporting requirements for anyone who was admitted to the Wisconsin bar in 2012, and, more broadly, to those admitted in even-numbered years.

[10] On March 14, 2014, B.R.C filed a response to the statement of costs asking that no costs be assessed.  The BBE then filed a reply on March 19, 2014, maintaining that full costs are warranted.  We impose the full costs of this proceeding consistent with SCR 40.075(5).

requirement that B.R.C. shall comply with the remaining term of the WisLAP monitoring contract that he signed in July 2012, with a termination date of July 2, 2014.

¶27 IT IS FURTHER ORDERED that within 60 days of the date of this order, B.R.C. shall pay to the Board of Bar Examiners the costs of this proceeding, which are $4,752.65 as of March 4, 2014.

¶28 SHIRLEY S. ABRAHAMSON, C.J., did not participate.